UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-10850
_____

HVAW, A Limited Partnership; BILL C. HUNTER,

Plaintiffs-Appellants,

versus

AMERICAN MOTORISTS INSURANCE CO.; DAVID E. LEE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:96-CV-1836-D)
_____

June 17, 1998

Before POLITZ, Chief Judge, REAVLEY, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

        Hunter, Van Amburgh & Wolf, P.C. ("HVAW") and Bill C.

Hunter, a lawyer at HVAW, were insured under primary and umbrella

policies issued by American Motorist Insurance Company ("AMICO").

AMICO declined to defend HVAW and Hunter in adversary bankruptcy

proceedings brought by Malcolm Kelso and Legal Econometrics, Inc.

_____

        [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("LEI"). After settling their dispute with Kelso and LEI, HVAW and Hunter brought this suit in Texas state court alleging that AMICO had a duty to defend them against the claims of Kelso and LEI. AMICO removed the case to federal court, where both parties filed for judgment as a matter of law on the issue of coverage. The district court granted AMICO judgment as a matter of law, finding that it did not have a duty to defend HVAW and Hunter. We affirm.

## I. Background

### A. Facts

HVAW and Hunter provided legal representation and services to various individuals and business entities associated with Grady and Gary Vaughn ("Vaughn entities"). In the late 1980s, the Vaughn entities were faced with numerous financial and legal difficulties. In an attempt to resolve these difficulties, the Vaughn entities entered into various complex financial and management agreements with LEI and Kelso in order to protect their money and properties. In short, LEI and Kelso were to provide "crisis management services" to the Vaughn entities. As part of this arrangement, LEI and Kelso received ownership interests in and control over certain Vaughn entities. Disputes soon arose between the Vaughn entities and LEI and Kelso over both LEI's and Kelso's control of various Vaughn entities and LEI's and Kelso's fees. LEI

and Kelso eventually declared bankruptcy, allegedly as a result of the financial difficulties caused by these disputes.

Once in bankruptcy, LEI and Kelso filed two adversary proceedings against HVAW, Hunter, and other defendants. The first suit (No. 393-3585) alleged a laundry list of causes-of-action including conspiracy, fraud, conversion, breach of fiduciary duty, tortious interference with contract, legal malpractice, and violations of the Texas Deceptive Trade Practices Act and federal racketeering law. The second suit (No. 393-3668) alleged that HVAW, Hunter, and other defendants violated the automatic stay by seeking to enforce various state court judgments against LEI and Kelso. It also alleged legal malpractice, breach of fiduciary duty, fraud, and conspiracy to defraud. The factual basis for these two adversary proceedings boils down to HVAW's and Hunter's alleged knowing and intimate participation in a complicated conspiracy involving the Vaughn entities and numerous other defendants to defraud LEI and Kelso.

AMICO refused to defend HVAW and Hunter in LEI's and Kelso's adversary proceedings on the ground that under the terms of the two policies at issue the alleged wrongful acts did not constitute an "occurrence." Eventually, HVAW and Hunter settled with LEI and Kelso in both adversary proceedings. HVAW and Hunter then initiated this lawsuit against AMICO to recover the cost of their defense in the two adversary proceedings.

3

## B. Insurance Policies

AMICO issued two types of policies to HVAW and Hunter. The first type of policy is a commercial general liability ("CGL") policy that covered "bodily injury" or "property damage" caused by an "occurrence." An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The second type of policy is a commercial catastrophe liability ("CAT") policy that essentially served as an umbrella policy to the CGL policy. Just like the CGL policy, the CAT policy provided coverage for certain injuries caused by an "occurrence." "Occurrence" is defined the same as in the CGL policy.

## II. Analysis

This court reviews a grant of summary judgment de novo. *See American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998). A district court's interpretation of an insurance contract is a question of law which this court also reviews de novo. *See id.* An insurer bears the burden of proving that exclusions in the policy in question bar coverage for the plaintiff's claims. *See id.*

In this diversity case, Texas rules of contract interpretation control. *See id.* Under Texas law, the

4

interpretation of insurance contracts is governed by the same rules that apply to contracts in general. *See id.* (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994)).

In determining an insurer's duty to defend, Texas courts utilize the "eight corners rule." *See id.* (citing *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997)). Under this rule, an insurer's duty to defend is determined by the language of the insurance policy and a liberal interpretation of the allegations in the pleadings. *See id.* "In reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Id.* (quoting *National Union Fire Ins. Co.*, 939 S.W.2d at 141); *see also Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App.--Houston [14th Dist.] 1993, writ denied) ("It is not the cause of action alleged that determines coverage but the facts giving rise to the alleged actionable conduct.").

The district court found that the factual allegations contained in LEI's and Kelso's two suits against HVAW and Hunter did not constitute an "occurrence" under the terms of the CGL and CAT policies and, therefore, AMICO had no duty to defend. We agree.

5

Under Texas law, a person's acts are not accidental when he commits an intentional act that results in injuries that ordinarily follow from or could be reasonably anticipated from the intentional act. *See id.* (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827-28 (Tex. 1997); *see also Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973) (stating that when "acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident . . . ." (quoting *Thomason v. United States Fidelity & Guar. Co.*, 248 F.2d 417, 419 (5th Cir. 1957)).

Therefore, in order to determine whether AMICO had a duty to defend Hunter and HVAW under the terms of its policies, we must decide whether Kelso and LEI alleged facts in their two adversary proceedings that could constitute an "accident" under Texas law.

## A.  Adversary Proceeding No. 393-3585

LEI's and Kelso's first complaint is premised on the factual allegation that HVAW and Hunter knowingly engaged in a complex conspiracy with the Vaughn entities and other defendants to defraud LEI and Kelso. The complaint itself states that "Hunter learned or knew of the Vaughns' intent to defraud Legal Econometrics and Kelso and set about to organize and orchestrate an even more elaborate conspiracy to defraud and otherwise damage

6

Legal Econometrics and Kelso . . . ." (¶ 138).[1] "Hunter was the mastermind and architect of the evolving conspiracy . . . ." (¶ 140). "Each [defendant] knew the object and purpose of the conspiracy was to defraud Legal Econometrics and Kelso and wrongfully deprive them of their services and property, each agreed to so wrong Legal Econometrics and Kelso, and each of them acted in furtherance of the said conspiracy."[2] (¶ 140). The complaint repeatedly describes the defendants' actions as "intentional, malicious, willful and wanton." In fact, Kelso's and LEI's request for relief on their claim of legal malpractice (Count XII) is factually premised on Hunter's and HVAW's knowing participation in the complex conspiracy against Kelso and LEI. (*See* ¶ 264). Although Kelso and LEI allege negligence (in the form of legal malpractice) against Hunter and HVAW, the facts supporting their allegation are all voluntary and intentional acts. *Cf. Farmers Texas County Mutual Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex. 1997) ("[A]lthough [plaintiff] seeks relief on legal theories of

---

[1] The complaint also states that the "Vaughns' scheme to loot the corporations was fully known to and aided and abetted by their counsel, Bruce Bowman and Bill Hunter, as well as Bowman's and Hunter's respective law firms (Vial Hamilton and Hunter Van Amburgh & Wolf)." (¶ 190).

[2] The complaint's request for relief states that "[e]ach of the above-named Defendants [including Hunter and HVAW] intentionally acted in furtherance of the conspiracy to defraud Legal Econometrics and Kelso and thereby caused Plaintiffs damage." (¶ 239).

negligence and gross negligence, he alleged facts indicating that the origin of his damages was intentional behavior. He made no factual contention that could constitute negligent behavior by [defendant].").

Because Kelso's and LEI's factual allegations all constitute intentional and voluntary acts, AMICO has no duty to defend under the terms of its policies.

### B. Adversary Proceeding No. 393-3668

LEI's and Kelso's second complaint essentially alleges that "[t]he violations of the automatic stay were willful, knowing, voluntary, volitional, and intentional. The violations were consummated with full and actual knowledge of the pendency of the automatic stay . . . ." (¶ 59). Kelso's and LEI's complaint repeatedly refers to Hunter's and HVAW's actions as both "deliberate" and "intentional, malicious, willful, and wanton." Again, while Kelso's and LEI's complaint alleges negligence (in the form of legal malpractice), the underlying factual claims are based on knowledge and intent. Because Kelso's and LEI's factual allegations all constitute intentional and voluntary acts, AMICO has no duty to defend under the terms of its policies.

### III. Conclusion

For the foregoing reasons, AMICO has no duty to defend Hunter or HVAW. The judgment of the district court is **AFFIRMED**.

8