SAN ANTONIO GARMENT FINISHERS, INC., and Nora Sierra, Plaintiffs,

v.

LEVI STRAUSS & CO., Defendant.

Civil No. SA–97–CA–1452 HG.

United States District Court,
W.D. Texas,
San Antonio Division.

Aug. 17, 1998.

Pat Maloney, Sr., Pat Maloney, Jr., James Edwin Willingham, Jr., Law Offices of Pat Maloney, PC, San Antonio, TX, for plaintiffs.

Judith R. Blakeway, Michael Hernandez, Wells Pinckney & McHugh, San Antonio, TX, Ted D. Lee, Gunn, Lee & Keeling, San Antonio, TX, Howard P. Newton, Matthews & Branscomb, P.C., San Antonio, TX, Peter H. Goldsmith, Leigh A. Kirmsse, Legal Strategies Group, Emeryville, CA, for defendant.

## ORDER

H.F. GARCIA, District Judge.

On this day, the Court considered Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Plaintiffs' Response to said Motion. Upon consideration, the Court

is of the opinion that Defendant's Motion for Summary Judgment should be GRANTED.[1]

## Statement of Facts

A brief summary of the facts is as follows: San Antonio Garment Finishers, Inc. ("SAGF") entered into an agreement with Levi Strauss & Co. ("Levi Strauss") in 1992, whereby SAGF agreed to perform work for Levi Strauss involving the pressing, washing and labeling of pants and jeans before they were shipped to consumers. The duties of the parties were outlined in a Finishing Process Agreement. Among the provisions of the agreement were clauses providing that the agreement may be terminated by either party upon thirty days written notice, that the contractor/seller was responsible for facilities, materials, machinery, equipment and labor necessary for the processing of garments, and that all amendments to the agreement must be in a writing signed and dated by both parties. The agreement also provided for the price, finish type, garment type, projected units, and delivery schedule for the clothing being sent to SAGF for finishing.

Each year a new Finishing Process Agreement was adopted by the parties. However, in April of 1997, Levi Strauss notified SAGF that it would no longer require SAGF's services because its production capabilities had surpassed demand for its clothing, and the agreement was finally terminated in October of 1997. SAGF filed the instant lawsuit that same month to recover damages from losing its work with the company, complaining that the company had made substantial investments in equipment to conduct work for Levi Strauss on the belief that Levi Strauss had promised to continue doing business with them for many years to come.

1. Only Plaintiffs' claims for breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, fraud, and constructive fraud are before the Court. Plaintiffs' claims for breach of contract, promissory estoppel, and negligent misrepresentation were dropped in Plaintiffs' second amended complaint.

2. The job of this Court, sitting in diversity, is to apply the same law as would be applied by the Texas state courts. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). In those cases where a state's highest court has spoken on an issue, the Court is bound

## Jurisdiction

This Court has jurisdiction to decide this matter under 28 U.S.C. § 1332, as the action is a civil action between citizens of different states and the amount in controversy exceeds $75,000.00.

## Discussion

### A. Summary Judgment Standard

Rule 56 provides that summary judgment is proper whenever "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making its determination, the Court must draw all justifiable inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513. Furthermore, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that a motion for summary judgment must be granted if, after adequate time for discovery, the non-movant "fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing[2]

■ Under California law, the covenant of good faith and fair dealing implied in every contract has been held in certain special cases to supply a requirement of good cause for termination where the contract itself is

by that decision unless it is convinced that the high court would overrule it if confronted with facts similar to those before the Court. *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 205, 76 S.Ct. 273, 277, 100 L.Ed. 199 (1956). However, with respect to SAGF's claims for breach of implied covenant of good faith and fair dealing, the Court must apply California law in accordance with paragraph 33 of the Finishing Process Agreement, which provides that the agreement shall be governed and construed in accordance with the laws of the United States of America and the State of California.

silent or ambiguous on that subject. *Gerdlund, et al. v. Electronic Dispensers Int'l*, 190 Cal.App.3d 263, 277, 235 Cal.Rptr. 279 (1987) (citations omitted). No obligation can be implied, however, which would result in the obliteration of a right expressly given under a written contract. "There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." *Id.* at 277, 235 Cal. Rptr. 279, citing *Shapiro v. Wells Fargo Realty Advisors* 152 Cal.App.3d 467, 482[, 199 Cal.Rptr. 613] (1984).

In *Gerdlund*, the plaintiffs filed suit against Electronic Dispensers International ("EDI") claiming that EDI had breached a written agreement by terminating them as sales representatives without good cause. The court, in reversing the decision of the lower court, held that it was error to instruct the jury to apply a good faith covenant at odds with the termination provision in the contract. *Gerdlund*, 190 Cal.App.3d at 278, 235 Cal.Rptr. 279. As the court stated, "[What] that duty [of good faith] embraces is dependent upon the nature of the bargain struck between [the parties] and the legitimate expectations of the parties which arise from the contract.... Few principles of our law are better settled, than that '[the] language of a contract is to govern its interpretation, if the language is clear and explicit....'" *Id.* at 277, 235 Cal.Rptr. 279, quoting *Brandt v. Lockheed Missiles & Space Co.* (1984) 154 Cal.App.3d 1124, 1129–30 [201 Cal.Rptr. 746].

■ The same rule applies here. SAGF and Levi Strauss entered into a Finishing Process Agreement which stated in Paragraph 5 that "Contractor/Seller shall process the Garments hereunder for the time period specified on page 1 and/or amendments. This Agreement may, however, be terminated earlier by either party upon thirty (30) days written notice." Regardless of any oral representations made by Levi Strauss that SAGF would "... have jackets as long as Levi's has jackets ..." or "... what happened before won't happen again ...," both parties had to operate under the idea that either party could terminate the agreement upon thirty days written notice as provided

in the agreement. In fact, Nora Sierra, president of SAGF, stated on page 166 of her deposition that she understood that either side could end the relationship. It was, therefore, incumbent on the parties to make business decisions based on the express provisions of that agreement, and neither party had obligations other than those expressed.

In short, the implied covenant of good faith and fair dealing does not provide rights not otherwise conferred by the contractual agreement of the parties. Accordingly, Plaintiffs' claim must fail.

## C. Breach of Fiduciary Duty

■ Texas law provides that a fiduciary duty will not be lightly created, as it imposes extraordinary duties. *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 567 (Tex.App.-Dallas 1989, no writ). A confidential relationship exists only where "one party is in fact accustomed to being guided by the judgment or advice of the other, or is justified in placing confidence in the belief that such party will act in its interest." *Thames v. Johnson*, 614 S.W.2d 612, 614 (Tex.Civ. App.—Texarkana 1981, no writ). The party owing the duty in a fiduciary relationship must put the interests of the beneficiary ahead of its own if the need arises. *Lee v. Wal–Mart Stores, Inc.*, 943 F.2d 554, 558–59 (5th Cir.1991) (citing Texas Supreme Court cases finding fiduciary relationships). However, the relationship between SAGF and Levi Strauss did not give rise to any such duty.

In *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591 (Tex. 1992), the Supreme Court of Texas held that, as a matter of law, the parties to a written franchise agreement in that case did not have a fiduciary relationship because there was no evidence of a "confidential relationship" between them. *Id.* at 594. The court, in considering the forty-plus year relationship between the parties, also held that "... a party to a contract is free to pursue its own interests ..." and the fact that "... a relationship has been a cordial one, of long duration ..." is not evidence of a confidential relationship. *Id.* at 594–95. Furthermore, the court observed that, although the existence of a confidential relationship is "ordinarily a ques-

tion of fact, when the issue is one of no evidence, it becomes a question of law." *Ibid.*

Similar reasoning was applied in *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.,* 55 F.3d 181 (5th Cir.1995), where the 5th Circuit held that the mere conversational use of the term "partnership" in Fieldcrest's correspondence and dealings with Floors Unlimited did not warrant the imposition of a fiduciary relationship between the parties. *Id.* at 188. According to the Court, there was no evidence that the relationship between Fieldcrest and Floors Unlimited was one "in which influence was 'acquired and abused' or one in which there was a 'heightened degree of trust and confidence that surpasses what is customarily shared between business associates'." *Ibid.*

■ There is no question that SAGF went to great lengths to meet the requirements Levi Strauss places on its suppliers. SAGF acquired new equipment and upgraded many of its facilities. However, both parties were free to pursue their own goals and had managers experienced in the garment industry.[3] Nor was there any agreement to share profits and losses.[4] In addition, although the parties had worked together amicably for five years, that alone will not establish a fiduciary duty. In *ARA Automotive Group v. Central Garage, Inc.,* 124 F.3d 720, 724 (5th Cir.1997), the Court found no fiduciary duty between a manufacturer and distributor—as a matter of law—despite a 36–year history of oral and written agreements, joint undertakings, shared confidences, cooperative ventures, and close personal relationships between the executives of the businesses. As the Court stated:

> The parallels between the present case and the previous cases are obvious, yet Central Garage's briefs make no attempt to distin-

guish them. Instead, it cites cases enumerating the various factors present in this case as indicative of a fiduciary relationship. Since *Crim Truck,* however, few Texas cases have found fiduciary relationships that carry fiduciary duties as a matter of law. *No Texas case cited by Central Garage or uncovered in our research has affirmed a fiduciary obligation in the context of a franchisor-franchisee, manufacturer-distributor relationship, or other transactional setting involving experienced managers.* [emphasis added] Federal courts that have applied Texas law to such relationships have not found a fiduciary obligation.

*Id.* at 726., (citations omitted).

Likewise, this Court finds no fiduciary relationship between SAGF and Levi Strauss. As the court made clear in *Crim Truck,* particularly in the business arena, trust and reliance alone are not sufficient ingredients for the relationship, for "[t]he fact that one businessman trust another, and relies upon his promise to perform a contract, does not rise to a confidential relationship."[5] *Crim Truck,* 823 S.W.2d at 594. Therefore, summary judgment in favor of Levi Strauss must be granted on this claim.

### D. Fraud

■ A promise to do an act in the future is actionable fraud only when made with the intention, design and purpose of deceiving, and with no intention of performing the act. *Airborne Freight Corp. v. C.R. Lee Enterprises, Inc.,* 847 S.W.2d 289, 294 (Tex.App.—El Paso 1992, writ denied). Plaintiff must show that the promise was false at the time it was made. *Schindler v. Austwell Farmers Cooperative,* 841 S.W.2d 853 (Tex.1992). Although a party's intent is determined at the time the party made the

---

3. The reputation of Levi Strauss as a successful clothing manufacturer is well-established. Nora Sierra, who founded SAGF in 1992, has worked in the garment industry since 1987, and worked with Levi Strauss while she was employed with Industrial Stonewash.

4. In *Consolidated Gas & Equip. Co. v. Thompson,* 405 S.W.2d 333, 336 (Tex.1966) the Texas Supreme Court found that "usual cases of fiduciary relationship have been attorney-and-client, part-

ners, close family relationships such as that of parent-and-child, and joint adventurers, particularly when there is an agreement among the joint venturers to share financial gains and losses."

5. See also *Schlumberger Technology Corp. v. Swanson,* 959 S.W.2d 171, 177 (Tex.1997) (holding that subjective trust between the parties to a contract does not, as a matter of law, transform a business relationship into a fiduciary relationship.)

representation, it may be inferred from the party's subsequent acts after the representation is made. Failure to perform, standing alone, is no evidence of the promisor's intent not to perform when the promise was made. However, that fact is a circumstance to be considered with other facts to establish intent. *Ibid.*

■ As in *Airborne,* however, the written contract vitiates any reliance the contractor may have placed in "sweeping, off-hand statements" made by the other party as a matter of law. *Id.* at 297. The 30–day termination provision, the provision providing that the contractor/seller was responsible for the facilities, materials, machinery and labor, and the provision for written amendments to the agreement clearly give notice that any oral promises to the contrary would not control. Statements that SAGF would be "in for the long term" or others do not indicate that Levi Strauss did not believe that to be the case, and SAGF should have obtained those promises in writing if they believed the statements to change the obligations of the parties under the Finishing Process Agreement. Therefore, the fraud claim asserted by the Plaintiffs also fails.

### E. Constructive Fraud

■ In order for a plaintiff to prevail on a constructive fraud theory, a plaintiff must first prove that a fiduciary relationship existed between the parties. *American Medical Int'l, Inc. v. Giurintano,* 821 S.W.2d 331, 339 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Marshall v. Quinn–L Equities, Inc.,* 704 F.Supp. 1384, 1396 (N.D.Tex.1988). Because the Court has found no fiduciary relationship between the parties, this claim is also dismissed.

### Conclusion

The claims asserted by the Plaintiffs herein cannot survive summary judgment. Knowing the terms of the Finishing Process Agreement, there is no basis for a finding that Levi Strauss did not act in accordance with that agreement. While the Plaintiffs may have believed they had good reason to depend on a company such as Levi Strauss, if they wanted a long-term commitment they

should have sought to amend the terms of the Finishing Process Agreement or to enter into a separate contract. In summary, SAGF thought it was in a relationship for the long run, but in fact, only agreed to a 30 day fling that lasted five years. The Court hereby ORDERS that Defendant's Motion for Summary Judgment be GRANTED.