**In re JACKSON NATIONAL LIFE INSURANCE COMPANY PREMIUM LITIGATION.**

No. 1122.

United States District Court,
W.D. Michigan,
Southern Division.

May 18, 2000.

Stephen L. Hubbard, Hubbard & Biederman, LLP, Dallas, TX, for Plaintiff.

Joel Feldman, Sachnoff & Weaver, Ltd., Chicago, IL, for Defendant.

## OPINION OF THE COURT ON THE SPRAGINS PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

McKEAGUE, District Judge.

Plaintiffs in this multi-district case are purchasers of or persons beneficially interested in life insurance policies underwritten and sold by defendant Jackson National Life Insurance Company ("Jackson National"). Plaintiffs allege they suffered loss due to Jackson National's representations. Among the actions transferred to and consolidated for pretrial proceedings in this Court pursuant to 28 U.S.C. § 1407, is *Spragins v. Jackson National Life Insurance Company*, W.D. Mich. No. 5:99–CV–30. The Spragins case was conditionally transferred to this Court from the Northern District of Texas on January 25, 1999. Now before the Court is the motion of the Spragins plaintiffs for class certification.

## I. PLAINTIFFS' CLAIMS

Plaintiffs include Robert B. Spragins, a Texas resident. He is the insured under a $500,000 Jackson National Preferred Ultimate I life insurance policy purchased by his employer, plaintiff Lone Star Diamond Company, Inc. ("Lone Star") in 1987. Plaintiff Linda D. Spragins is the beneficiary under the policy. Plaintiffs allege Lone Star was induced to purchase the policy by representations and illustrations indicating it would be required to pay annual premiums of approximately $4,700 for only eleven years. Thereafter, they were led to believe, the premiums would "vanish" and the policy would remain in full force and be fully paid up.

After timely making the annual premium payments, however, Lone Star was advised in January 1997 that additional premium payments, beyond the eleventh, would be required to keep the policy in force. This was ostensibly because the rate of return realized by Jackson National on the premium payments received was insufficient to enable payment of successive premiums out of the accumulated cash value, as projected when the policy was purchased.

Plaintiffs have thus been faced with the choice of either incurring the unexpected expense of continuing premium payments or potentially surrendering the policy at a substantial loss. This injury, they allege, is caused by Jackson National's failure to disclose that the illustrations which induced purchase of the policy contained projections, based on then current credited interest rates, that were not reasonably likely to be maintained.

Plaintiffs' complaint asserts claims under Texas law for fraud, negligence, negligent misrepresentation, violations of the Texas Insurance Code and the Texas Business & Commerce Code, and breach of contract. Plaintiffs proceed in this action on their own behalf and on behalf of other similarly situated Texas residents. In the instant motion, they ask the Court to certify a narrowly defined class:

[A]ll persons ("Texas Only Class" or "Class Members") who own or owned Ultimate I or Ultimate II policies issued in the State of Texas by Jackson National Life Ins. Co. ("Jackson National") or Jackson National Life Ins. Co. of Texas ("Jackson National Texas") and based upon objective evidence received a vanishing premium illustration at the time of purchase in which the vanish point was within five years of the filing of this lawsuit. Excluded from the class are: (1) all existing and former employees, agents, or anyone else acting on Jackson National's or Jackson National Texas' behalf, and their immediate family members; or (2) all persons who died while their permanent life insurance policy was in-force.

Plaintiffs seek certification of this class only with respect to their common law fraud claim and their claim for violation of the Texas Insurance Code. They seek certification under Fed.R.Civ.P. 23(b)(2) and (b)(3).

## II. RULE 23 STANDARDS

■ (1) The Court has broad discretion in deciding whether to certify a class, but

must conduct a "rigorous analysis" to ensure the prerequisites of Rule 23 are met. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1078–79 (6th Cir.1996). "Maintainability may be determined by the Court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide." *Id.,* at 1079, quoting *Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir.1974). See also *Castano v. American Tobacco Co.,* 84 F.3d 734, 744 (5th Cir.1996) (going beyond pleadings may be necessary to enable understanding of precise nature of claims in context of certification issues); *Cohn v. Massachusetts Mutual Life Ins. Co.,* 189 F.R.D. 209, 212 (D.Conn.1999) (accord). The party seeking class certification bears the burden of proof. *American Medical Systems,* 75 F.3d at 1079.

Subsection (a) of Rule 23 sets forth four threshold requirements that must all be met before a class can be certified:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If each of these prerequisites is satisfied, the movant must also show that the action falls within one of the categories listed in Rule 23(b), of which subsections (2) and (3) are here at issue:

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair

and efficient adjudication of the controversy . . .

The Court now considers these requirements in order.

**A. Rule 23(a)**

Although Jackson National opposes the motion for class certification, it has not contested plaintiffs' showing that the threshold requirements of Rule 23(a) are satisfied. The Court therefore assumes for present purposes that the numerosity, commonality, typicality and representational adequacy requirements of Rule 23(a) are met.

**B. Rule 23(b)(2)**

Plaintiffs contend class certification is appropriate under Rule 23(b)(2) because their complaint includes a prayer for injunctive relief applicable to the entire class. See *Fuller v. Fruehauf Trailer Corp.,* 168 F.R.D. 588, 602 (E.D.Mich.1996) (Rule 23(b)(2) is satisfied if opposing party's conduct is generally applicable to the class and final injunctive relief is requested for the class). Jackson National points out that this Court has previously rejected a similar argument in connection with other plaintiffs' motion for class certification in this MDL action. See *In re Jackson National Life Ins. Co. Premium Litigation,* 183 F.R.D. 217, 220 (W.D.Mich.1998). Here, as there, Jackson National argues, the requested injunctive relief is merely incidental to plaintiffs' predominant objective, monetary relief.

■ Rule 23(b)(2) certification is not appropriate where, notwithstanding a request for injunctive relief, the predominant relief requested is monetary. *Boughton v. Cotter Corp.,* 65 F.3d 823, 827 (10th Cir.1995); *Nelsen v. King County,* 895 F.2d 1248, 1254–55 (9th Cir.1990); *Arch v. American Tobacco Co.,* 175 F.R.D. 469, 481–82 (E.D.Pa.1997); *Heartland Communications, Inc. v. Sprint Corp.,* 161 F.R.D. 111, 117 (D.Kan.1995). These authorities are not at odds with *Fuller,* which also recognizes that the Rule 23(b)(2) determination is dependent on the nature of the primary relief sought. 168 F.R.D. at 603.

■ Plaintiffs have not responded to Jackson National's argument and have not even

attempted to distinguish the Court's earlier ruling in this regard. Indeed, the complaints at issue appear to be materially indistinguishable. Here, too, it is clear that plaintiffs' request for injunctive relief is merely incidental to their prayer for compensatory and punitive damages. Plaintiffs pray, not for an order requiring Jackson National to provide life insurance to plaintiffs in conformance with the alleged sales representations, but for an order requiring payment of the costs of providing conforming life insurance. Similarly, their requests for an order requiring disgorgement of ill-gotten gains or imposing a constructive trust, and for an order requiring establishment of a claims resolution facility, also serve the ultimate goal of monetary restitution. The requested injunctive relief is designed primarily to facilitate and ensure the satisfaction of any monetary relief the Court might award. Because the relief requested is predominantly monetary, class certification under Rule 23(b)(2) is inappropriate.

## C. Rule 23(b)(3) Predominance

Rule 23(b)(3) class certification requires first that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." This predominance inquiry is "far more demanding" than Rule 23(a)'s commonality requirement and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2249–50, 138 L.Ed.2d 689 (1997). No precise test governs the predominance determination. 5 Moore's Federal Practice, 3rd ed., § 23.46[1]. Rather, the Court must make a "pragmatic assessment of the entire action." *Id.*

In denying other plaintiffs' earlier motion to certify a nationwide class, the Court concluded common questions of law or fact had not been shown to predominate for two reasons: (1) because the plaintiffs' claims depended on a showing of their reliance on defendant's misrepresentations, a matter requiring individualized factual development; and (2) because variations among the laws of the 49 states in which putative class mem-

bers resided compounded the proliferation of disparate factual and legal issues. 183 F.R.D. at 222–23. Plaintiffs contend both of these problems are avoided by their proposed class, which is much narrower and implicates Texas law only. Moreover, they contend, under Texas law, they need not show each plaintiff's reliance to prevail on the two claims for which they seek certification. Jackson National disputes this point, arguing the reliance element remains critical to plaintiffs' claims, unavoidably requires individualized factual development, and defeats the predominance of common issues.

### 1. Reliance: Common Law·Fraud

Actionable fraud is established under Texas law upon a showing of "a material representation, that is false, whether known to be false when made or is asserted without knowledge of its truth, that is intended to be and is relied upon, and that causes injury." *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex.1997). "[W]hen circumstances impose upon a party a duty to speak and the party remains silent, the silence itself can be a false representation." *Id.* Yet, to prevail on a silent fraud claim, just as with a fraud claim based on an affirmative misrepresentation, the defrauded party must show he reasonably relied on the silence to his detriment. *Id.*

Plaintiffs acknowledge that reliance is an element of their fraud claim. They also acknowledge that the need to prove each plaintiff's reliance has been deemed an insurmountable obstacle in other recent rulings denying class certification in vanishing premium cases. See *Kent v. SunAmerica Life Ins. Co.*, 190 F.R.D. 271, 279–80 (D.Mass. 2000); *Cohn v. Massachusetts Mutual Life Ins. Co.*, 189 F.R.D. 209, 215–17 (D.Conn. 1999); *Parkhill v. Minnesota Mutual Life Ins. Co.*, 188 F.R.D. 332, 343–44 (D.Minn. 1999). Yet, they insist the need to prove each plaintiff's reliance is no impediment to class action treatment in this case because reliance can be presumed on a class-wide basis. Because the misrepresentation is said to consist of a failure to disclose information relating to material facts that Jackson Na-

tional was obliged to disclose, plaintiffs argue, reliance may be presumed.

Indeed, this is the conclusion recently reached in another multi-district vanishing premium life insurance case, *In re Great Southern Life Ins. Co. Sales Practices Litigation*, 192 F.R.D. 212 (N.D.Tex.2000). In *Great Southern*, the defendant insurance company marketed vanishing premium policies through the use of policy illustrations that were admittedly often based on inflated and not realistic performance models. *Id.* at 214–15. These illustrations were allegedly presented to prospective purchasers by agents who were not informed of the unrealistic assumptions underlying the illustrations. The agents were therefore unable to and allegedly failed to disclose information relating to material facts. This is information Great Southern was obliged to disclose, the court concluded, accepting plaintiffs' allegations as true, because Great Southern stood in a fiduciary relationship to its customers. Inasmuch as Great Southern was thus alleged to have failed to disclose material information it had a duty to disclose, the court held that a rebuttable presumption of reliance arose.

Plaintiffs urge the Court to adopt the same reasoning in this case. For the following reasons, the Court declines to do so.

First of all, in *Great Southern*, the district court, in deciding the class certification question, appears to have felt unduly constrained not to look beyond the pleadings. Twice the court cited *Miller v. Mackey Int'l Inc.*, 452 F.2d 424 (5th Cir.1971), for the proposition that inquiry into the merits is irrelevant to the class certification question. *Great Southern*, at 214–15, 221. While this is undoubtedly true as a matter of general proposition, it does not excuse responsibility for conducting a rigorous analysis to ensure the requirements of Rule 23 are met. This rigorous analysis ordinarily requires probing beyond the pleadings to achieve an understanding of the precise nature of the claims and enable a pragmatic assessment of the appropriateness of class action treatment. This is no less true in the Fifth Circuit than in the Sixth

Circuit. *See Castano*, 84 F.3d at 744; *American Medical Systems*, 75 F.3d at 1079.

Yet, because the *Great Southern* court declined to look beyond the complaint, it accepted the allegation that Great Southern had uniformly failed to inform policy owners of its pricing assumptions notwithstanding Great Southern's contention that plaintiffs received varied illustrations, which were delivered by insurance agents who made varied representations. This step was critical to the court's finding that the plaintiffs were entitled to a presumption of reliance on a classwide basis; for the court recognized individual fact issues would predominate and class certification would be inappropriate if the defendant's misrepresentations varied in each transaction. *Great Southern*, at 219–20.

Here, too, plaintiffs seek certification of a class of persons who "received a vanishing premium illustration at the time of purchase." Plaintiffs contend the illustrations were prepared by Jackson National and uniformly failed to disclose that the projections contained therein were not likely to be realized. In response, Jackson National contends illustrations, which changed over time as the credited interest rate changed, were delivered and shown to prospective purchasers only by independent sales agents. Exhibits filed by Jackson National, unrefuted by plaintiffs, demonstrate the illustrations did not expressly make promises or assurances or representations concerning the actual future performance of the subject policy; they merely depicted charts of projected cash surrender values and death benefits, based on assumed annual premium payments and the current credited interest rate. Each of the various illustrations included the following disclaimers:

> PROJECTED VALUES ARE NEITHER GUARANTEES NOR ESTIMATES BUT ARE BASED ON CURRENT MORTALITY AND INTEREST RATE OF **%. THE MINIMUM INTEREST GUARANTEE IS **%.[1]

> THIS IS AN ILLUSTRATION, NOT A CONTRACT . . .

---

**1.** The current and guaranteed interest rates were defined in each illustration, but varied over time.

The illustrations thus were not designed to be read in isolation, but were to be used merely as part of a sales presentation. It was incumbent on the individual sales agents to use the illustrations as they saw fit and to explain them to prospective purchasers.

In earlier proceedings in this litigation, Jackson National has demonstrated that the independent sales agents were not subject to uniform policies regarding use of the illustrations and were not required to follow uniform sales scripts. "This freedom led to great variance in representations made by brokers; some explaining away and others even exacerbating any misleading tendencies the policy illustrations may have had." *Jackson National*, 183 F.R.D. at 221. These variances create case-specific fact issues—relating to representations made, their materiality, and the fact and reasonableness of plaintiffs' reliance thereon—which tend to overwhelm the common questions of law and fact.

■■■ Plaintiffs would have the Court ignore evidence of varying oral representations and focus on the illustrations alone. There is, however, no affirmative misrepresentation on the face of the illustrations. The alleged misrepresentation is said to be one of omission. Yet, a party's silence can be an actionable false representation under Texas law only when the circumstances impose a duty to speak. *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1004 (5th Cir. 1997). "Texas law recognizes a duty to disclose only where a fiduciary or confidential relationship exists." *Id.* See also *Leigh v. Danek Medical, Inc.*, 28 F.Supp.2d 401, 405–06 (N.D.Tex.1998).[2]

■■■ In *Great Southern*, the insurance company was deemed to have had such a duty to disclose as a function of its fiduciary relationship with purchasers. The court recognized that under Texas law, the relationship between an insurance company and a prospective purchaser is, unlike attorney-client and principal-agent relationships, not fiduciary in nature as a matter of law; and

that, therefore, determining whether a fiduciary relationship exists is a question of fact to be resolved on a case by case basis. *Great Southern*, at 220–21, citing *UTAIC v. MacKeen & Bailey, Inc.*, 99 F.3d 645, 649 (5th Cir.1996). See also *ARA Automotive Group v. Central Garage, Inc.*, 124 F.3d 720, 723 (5th Cir.1997) (existence of fiduciary relationship is usually a fact intensive inquiry). Yet, because the *Great Southern* court accepted the plaintiffs' allegations as true, and found them facially sufficient to support the finding of a fiduciary relationship, its "rigorous analysis" of the Rule 23 requirements appears to have been artificially truncated. That is, despite observing that the fiduciary relationship question posed a case-specific question of fact, the *Great Southern* court turned a blind eye to the manageability problems posed by this question of fact.

■■■ Under Texas law, "a fiduciary duty will not be lightly created, as it imposes extraordinary duties", and requires the fiduciary to "put the interests of the beneficiary ahead of its own if the need arises." *Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 188 (5th Cir.1995). A fiduciary relationship exists only where one party is in fact "accustomed to being guided by the judgment or advice of the other, or is justified in placing confidence in the belief that such party will act in its interest." *UTAIC*, 99 F.3d at 649; *San Antonio Garment Finishers, Inc. v. Levi Strauss & Co.*, 18 F.Supp.2d 669, 672 (W.D.Tex.1998). "Not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex.1997). Subjective trust alone is not enough to transform arms-length dealing into a fiduciary relationship. *ARA Automotive Group*, 124 F.3d at 724 n. 3; *San Antonio Garment Finishers*, 18 F.Supp.2d at 673 n. 5. To impose fiduciary duties upon one party to a business transaction, the Court must find that a fiduciary or confidential relationship existed prior to and apart from the agree-

---

2. A duty to disclose may also arise "when one party knows that the other party is relying on the concealed fact, provided that he knows that the relying party is ignorant of the facts and does not have an equal opportunity to discover the truth."

*World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 670 (Tex.Civ.App.—Fort Worth 1998). This alternative source of a duty to disclose is no help to plaintiffs because it necessitates the same reliance inquiry which they now seek to avoid.

ment made the basis for the lawsuit. *Schlumberger*, 959 S.W.2d at 177; *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex.1995). However, even evidence of a long-standing relationship marked by cordiality is, in itself, no evidence of a fiduciary relationship. *ARA Automotive Group*, 124 F.3d at 724 n. 3; *San Antonio Garment Finishers*, 18 F.Supp.2d at 673.

◼ The Court has set forth the above standards at length because they highlight the necessity of further factual development. Neither the complaint nor the record now before this Court spells out the factual basis for a finding: (1) that Jackson National had a fiduciary relationship with the plaintiffs *prior* to their complained of purchases of Ultimate I and Ultimate II policies; or (2) that plaintiffs were accustomed to being guided by the judgment or advice of Jackson National; or (3) that plaintiffs were reasonably justified in placing confidence in the belief that Jackson National would act in their interest; or (4) that Jackson National's communications with them through the illustrations were anything other than arm's-length dealings. It is conceivable that some putative class members will be able to show that Jackson National owed them fiduciary duties, but this is a fact intensive inquiry that will have to be undertaken on a case by case basis. The necessity of this case by case inquiry implicates individualized fact issues that defy fair and efficient management in a class action. Indeed, these fact issues are closely akin to those implicated by the reliance element of plaintiffs' fraud claim.

If there is no plausible basis for finding Jackson National had a fiduciary relationship with the putative class members on a classwide basis, then Jackson National cannot be deemed to have had a class-wide duty to disclose. Absent such a duty to disclose, there is no ground for a rebuttable presumption of reliance. Absent such a presumption, it is incumbent on each plaintiff to prove reliance as a prerequisite to recovery for fraud. And the need to prove reliance has been consistently held in recent vanishing premium cases to pose individual fact issues that overwhelm the common ones. *Kent*, 190 F.R.D. at 279–80; *Cohn*, 189 F.R.D. at 215–17; *Parkhill*, 188 F.R.D. at 343–44; *Jackson National*, 183 F.R.D. at 222–23.

Accordingly, the Court finds that plaintiffs' common law fraud claim unavoidably presents case-specific questions of fact, relating either to each class member's reliance or the existence of a fiduciary relationship. Each of these issues defies proof on a class-wide basis. Plaintiffs have thus failed to show that class-wide issues of fact or law predominate over questions affecting only individual members.

## 2. Reliance: Texas Insurance Code

Plaintiffs also ask the Court to certify a class with respect to their claim for violation of the Texas Insurance Code. The complaint alleges Jackson National engaged in an unfair and deceptive act or practice in the business of insurance, violating Art. 21.21 § 4(1) and (2) of the Texas Insurance Code. The violation allegedly consisted of Jackson National's misrepresentation, by statements or omissions, of the characteristics and benefits of the vanishing premium policies. The claimed violation that is the focus of plaintiffs' class certification motion, however, based on omissions of material facts, is more accurately defined by Art. 21.21 § 4(11).[3],[4]

---

3. This discrepancy between the complaint and the motion has not been challenged by Jackson National and the Court assumes, for present purposes, that plaintiffs have adequately pled a claim under Art. 21.21 § 4(11).

4. Art. 21.21 § 4(11) provides:
   (11) Misrepresentation of Insurance Policy. Misrepresenting an insurance policy by:
   (a) making an untrue statement of material fact;
   (b) failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
   (c) making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of a material fact;
   (d) making a material misstatement of law; or
   (e) failing to disclose any matter required by law to be disclosed, including a failure to make disclosure in accordance with another provision of this code.

Plaintiffs contend reliance is not an element of their misrepresentation claim under this section of the Texas Insurance Code. All they need show, they argue, is an omission of material fact under circumstances that would mislead a reasonably prudent person.

Jackson National concedes that reliance is not *formally* a necessary element of plaintiffs' claim under Art. 21.21. See *Hart v. Berko, Inc.*, 881 S.W.2d 502, 507 (Tex.Civ. App.—El Paso 1994), *overruled on other grounds, Crown Life Ins. Co. v. Casteel*, 43 Tex. Sup. Ct. J. 348 (Tex.); *First American Title Company of El Paso v. Prata*, 783 S.W.2d 697, 701 (Tex.Civ.App.—El Paso 1989). Jackson National maintains, however, that, pursuant to Art. 21.21 § 16, plaintiffs must prove they sustained actual damages that were caused by Jackson National's alleged omission of material fact. This causation showing is said to implicate the same inquiry as the reliance element in the common law fraud claim.

■ In both *Hart* and *Prata*, the Texas Court of Appeals recognized there can be no recovery under Art. 21.21 absent evidence establishing the alleged false, misleading or deceptive act that was a "producing cause" of the plaintiff's actual damages. *Hart*, 881 S.W.2d at 506–07; *Prata*, 783 S.W.2d at 701. A "producing cause" is defined as "an efficient, exciting or contributing cause." *Id.* In order for a misrepresentation or failure to disclose to be a producing cause of actual damages, the Texas courts have held there must ordinarily be some evidence of reliance on the misrepresentation, or inducement of action or inaction based on the misrepresentation. See *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701–02 (5th Cir.1999) (recognizing reliance as integral to showing of causation); *Provident American Ins. Co. v. Castaneda*, 988 S.W.2d 189, 200 (Tex.1998) (absent evidence of reliance, misrepresentation is not shown to have caused damages); *HVAW v. American Motorists Ins. Co.*, 968

F.Supp. 1178, 1185 (N.D.Tex.1997) (misrepresentation deemed not to be material absent evidence of inducement to action or of producing cause); *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 995 S.W.2d 804, 814 (Tex.Civ.App.—San Antonio 1999) (no recovery for misrepresentation where it failed to induce action contributing to adverse consequences); *Hart*, 881 S.W.2d at 506–07 (some evidence of reliance needed to sustain finding of producing cause); *State Farm Fire & Casualty Co. v. Miller*, 713 S.W.2d 700, 704 (Tex.Civ.App.—Dallas 1986) ("producing cause" requirement implies need for evidence of reliance and injury resulting from reliance).

■ It is thus apparent that even though Jackson National be shown to have engaged in a deceptive trade practice, it is actionable by plaintiffs only upon a showing of their reliance, or something closely akin thereto. The need to undertake such a factual inquiry with respect to each plaintiff, again, defeats the predominance of common questions of law and fact.[5]

### D. Rule 23(b)(3) Superiority

An additional prerequisite to class certification under Rule 23(b)(3) is the finding "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The Court is required "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 632 (3rd Cir.1996), *aff'd sub nom., Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

In view of the unavoidable need to make individualized factual inquiries regarding each of the claims sought to be certified for each of the putative class members, who undisputedly number in the thousands, it is clear that a class action trial would be unmanageable. See *Castano*, 84 F.3d at 745 n.

---

**5.** Plaintiffs urge the Court to presume reliance on a class-wide basis because of the materiality of the information not disclosed in the illustrations. However, they cite no Texas case law authority for the application of such a presumption to a claim under Art. 21.21. Moreover, the deposition testimony of plaintiff Robert Spragins himself exposes the inaptness of such a presumption, for he testified that he relied on the oral representations of the sales agents rather than the contents of the illustrations he was shown. Robert Spragins Dep. pp. 61, 90–91.

19 ("The greater the number of individual issues, the less likely superiority can be established"); *Cohn,* 189 F.R.D. at 219 (accord). Plaintiffs have thus failed to show that class action treatment would be superior to individual trials of putative class members' claims.

## III. CONCLUSION

The Court has carefully considered plaintiffs' motion for class certification and finds it wanting. Plaintiffs have failed to demonstrate that class certification is appropriate under Rule 23(b)(2) by showing that the relief sought is primarily declaratory and injunctive, rather than monetary. They have also failed to show, as required by Rule 23(b)(3), that common questions of law and fact predominate over the individual issues which their claims implicate. For these reasons, it is apparent that class action treatment is not superior to other available methods for the fair and efficient adjudication of the controversy.

Accordingly, the Spragins plaintiffs' motion for class certification will be denied. An order consistent with this opinion shall issue forthwith.