## In re JACKSON NATIONAL LIFE INSURANCE COMPANY Premium Litigation.

### No. MDL NO. 1122.

United States District Court,
W.D. Michigan,
Southern Division.

July 18, 2001.

---

Joel Feldman, Sachnoff & Weaver, Ltd., Chicago, IL, Edwin DeYoung, Liddell, Sapp, Zivley, Hill & LaBoon, Dallas, TX, G. Wade Caldwell, Martin, Drought & Torres, San Antonio, TX, Mary Kator, Jackson National Life, Lansing, MI, David A. Jones, Akin, Gump, Straus, Hauer & Feld, San Antonio, TX., for Jackson National Life Insurance Company Premium Litigation.

## OPINION AND ORDER ON CHOICE OF LAW

McKEAGUE, District Judge.

Plaintiffs Francesco A. Carfagno and Laura Lujan de Carfagno, husband and wife, are residents of the Republic of Mexico.[1] In 1991 and 1995, respectively, they purchased life insurance policies issued by defendant Jackson National Life Insurance Company ("Jackson National"), a Michigan corporation. On April 7, 1999, they commenced this action in the District Court for Bexar County, Texas. Defendant Jackson National removed the action to the United States District Court for the Western District of Texas, with consent of defendants Cora Turpin and Fernando Turpin, the independent insurance agents in San Antonio, Texas, who negotiated the sales of plaintiffs' policies. Subsequently, the action was consolidated with other related cases in this multi-district litigation and transferred to this Court. Now before the Court is plaintiffs' motion for application of Mexican law.

## I. PLAINTIFFS' CLAIMS

Notwithstanding their request that Mexican law be applied, only one of the eight claims asserted in plaintiffs' second amended complaint is based on Mexican law, the count I claim for rescission. Plaintiffs claim entitlement to rescission alleging the policies are not legally enforceable in Mexico because Jackson National was not authorized to conduct

---

1. Although Laura Carfagno is a citizen of Mexico, Francesco Carfagno is a citizen of Italy.

business in Mexico, and because Mexican residents are prohibited by Mexican law from contracting with foreign insurance companies while in Mexico on the effective date of the contract. The remaining seven claims seek relief under Texas law, alleging defendants engaged in deceptive trade practices, committed fraud, made negligent misrepresentations, breached fiduciary duties, breached the insurance contracts, and violated duties of good faith and fair dealing. Plaintiffs explain that the claims brought under Texas law are pled in the alternative, to be pursued only if the count I claim under Mexican law is disallowed.

## II. GOVERNING STANDARDS

 The parties agree that the choice of law determination must be based on the law of the state of the forum court, or, in the case of multi-district litigation, the transferor court, i.e., Texas. *See Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 n. 2 (6th Cir.2000); *In re Temporomandibular Joint Implants Products Liability Litigation*, 97 F.3d 1050, 1055 (8th Cir.1996). The parties further agree that where, as here, the parties have not contractually agreed on the governing law, Texas law employs the "most significant relationship test." *See St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir.1996); *Minnesota Mining & Mfg. Co. v. Nishika, Ltd.*, 953 S.W.2d 733, 735–36 (Tex.1997). Where the dispute arises out of a contractual relationship, the state with the most significant relationship to the transaction and the parties is determined with reference to certain contacts, enumer-

ated in § 188(2) of the Restatement (Second) of Conflict of Laws: [2]

 (a) the place of contracting;

 (b) the place of negotiation;

 (c) the place of performance;

 (d) the location of the contract's subject matter; and

 (e) the parties' domicile, residence, nationality, place of incorporation, and place of business.

*Minnesota Mining & Mfg. Co.*, 953 S.W.2d at 735–36. Further, these contacts must be evaluated "according to their relative importance with respect to the particular issue" and in light of policy factors set forth at § 6(2) of the Restatement:

 (a) the needs of the interstate and international systems,

 (b) the relevant policies of the forum,

 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

 (d) the protection of justified expectations,

 (e) the basic policies underlying the particular field of law,

 (f) certainty, predictability and uniformity of result, and

 (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws, § 6(2). *See* Restatement (Second) of Conflict of Laws,, § 188(1) and (2); *Minnesota Mining & Mfg.*, 953 S.W.2d at 736.

 Another provision of the Restatement is specifically pertinent:

---

**2.** Although most of plaintiffs' claims arise in tort, for which a slightly different set of factors could be applied, *see* Restatement (Second) of Conflict of Laws, § 145, the only claim for which plaintiffs seek application of Mexican law is the count I claim, challenging the validity of the subject insurance contracts. It is for this reason, ostensibly, that the parties agree the § 188(2) factors, applicable in the case of a contractual relationship, should be applied.

The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws, § 192. Thus, generally speaking, a rebuttable presumption is created to the effect that the domicile of the insured is deemed to have the most significant relationship to the subject matter unless consideration of the Restatement § 6(2) policy factors dictates a different conclusion.

### III. RELEVANT FACTS

The facts facially relevant to the choice of law determination are not entirely undisputed.

At all times pertinent to this matter, both plaintiffs were domiciled in Mexico. It is undisputed, however, that their initial contact with defendants Fernando and Cora Turpin, the independent insurance agents, occurred in San Antonio, Texas, while plaintiffs were visiting at their aunt's home. There they first discussed the possibility of purchasing a Jackson National life insurance policy. There were subsequent meetings and negotiations, in person, by telephone and by facsimile communication, both in Mexico and San Antonio. According to the applications for insurance, each plaintiff's application was

signed in San Antonio. Yet, while the Turpins' deposition testimony is consistent with the applications in this regard, plaintiffs recall having signed their applications in Mexico. There are also disputes of fact as to whether plaintiff Francesco Carfagno underwent a medical examination in conjunction with his application, and whether plaintiff Laura Lujan de Carfagno's medical examination was conducted in Mexico or Florida. Still, it is undisputed that the initial and subsequent premium payments, drawn either on a Texas bank or an Ohio bank, have been paid to the Turpins in San Antonio, and that both policies became effective upon delivery to plaintiffs in San Antonio. Both policies remain in force.

### IV. ANALYSIS

■ Pursuant to Restatement § 192, the Court begins its analysis with the presumption that the law of plaintiffs' domicile, Mexico, will govern unless consideration of the § 6(2) policy factors, with reference to the contacts relevant to a contractual relationship under § 188(2), demonstrates that Texas has a more significant relationship to the policies. *See* Restatement § 192, comment c.

#### A. Contractual Contacts

1. *Place of Contracting.* Each plaintiff's application for insurance expressly provides that it is the basis for any policy issued and that any policy issued on the application shall not take effect unless and until the policy is delivered to the owner of the policy after the first full premium is paid. It is undisputed that both plaintiffs received delivery of their policies in San Antonio. Thus, Texas is the place of contracting.[3]

---

**3.** In *New York Life Ins. Co. v. Baum,* 700 F.2d 928 933 (5th Cir.1983), the court disregarded the "delivery" prerequisite to effectiveness of an insurance policy, holding the contract was essentially consummated at the insurer's home office, where the application was accepted and the policy issued. Application of such reasoning in the instant case would sup-

2. *Place of Negotiation.* It is agreed that negotiations leading to the formation of both contracts took place in both Texas and Mexico.

3. *Place of Performance.* The place of performance factor appears to be of little consequence where the contract imposes mutual payment obligations. *See Houston Casualty Co. v. Certain Underwriters at Lloyd's London,* 51 F.Supp.2d 789, 797 (S.D.Tex.1999). Yet, where plaintiffs pay their premiums from Mexico to the Turpins in Texas for forwarding to Jackson National in Michigan, and where any life insurance benefit is to be paid by Jackson National in Michigan to beneficiaries in Mexico, it is apparent that, to the extent place of performance is significant at all, Mexico has more performance contacts than does Texas.

4. *Location of Contract's Subject Matter.* This factor also appears to have little independent significance in connection with a life insurance policy. To the extent that the life of the insured is the subject matter of each policy, the location thereof may be adequately accounted for in consideration of the parties' domiciles, below. To the extent that plaintiffs' domicile is entitled to independent consideration in this context, this factor favors a finding that Mexico has more significant contacts than Texas.

5. *The Parties' Domicile, Residence, Nationality, Place of Incorporation, and Place of Business.* Plaintiffs are domiciliaries of Mexico, defendants Fernando and Cora Turpin are domiciliaries of Texas, and Jackson National has its principal place of business in Michigan. Inasmuch as plaintiffs' count I claim for rescission challenges the validity of the contracts between plaintiffs and Jackson National, the domicile of the Turpins is less significant to the particular issue posed by count I. That is, even though the Turpins' conduct is integral to determination of the validity of the policies, in the context of the claim for rescission, they are not party defendants whose domicile matters. It follows that as between Mexico and Texas, consideration of the parties' domiciles weighs in favor of finding that Mexico's contacts are superior to those of Texas.

In sum, then, consideration of the relative contractual contacts in and of themselves, pursuant to Restatement § 188(2), suggests no reason to disturb the presumption created by § 192 that the law of the insureds' domicile should be applied. Next, the Court evaluates these contacts in light of the § 6(2) policy considerations.

### B. Policy Considerations

1. *Needs of Interstate and International Systems.* Plaintiffs contend that defendants' conduct resulting in plaintiffs' purchase of the two insurance policies was unlawful under Mexican law. Since Mexican law comprehensively regulates the business of insurance in Mexico, plaintiffs contend this Court, in the interest of comity, ought to apply Mexican law out of respect for Mexico's efforts to restrict unauthorized insurance activities there.

Defendants' conduct is said to have been unlawful because Jackson National is undisputedly not authorized to conduct the business of insurance in Mexico. In support, plaintiffs cite the declaration of Javier L. Navarro Velasco, a lawyer who has practiced law in Mexico for over 20 years. With reference to Mexico's General Law of

---

port application of Michigan law to plaintiffs' count I claim, a result for which none of the parties has argued. Under these circumstances, it is preferable to give meaning to the express terms of the parties' agreement and recognize that more of the indicia of contracting occurred in Texas than in Mexico.

Mutual Insurance Companies and Corporations ("General Law"), Article 3, Mr. Velasco opines that it is unlawful for a person to practice active insurance operations and even to *offer*, by any means, public or private, within the national territory of Mexico, a policy of insurance issued by an insurance company not authorized to conduct business in Mexico. *See* Art. 3, §§ I and IV. He further opines that a contract that is the product of such activities is voidable and subject to rescission. *See id.*, Art. 3, § IV.

Defendants contend that the Turpins' communications with plaintiffs in Mexico were not a function of active insurance operations in Mexico, but were responsive to plaintiffs' inquiries, initiated in San Antonio. They also argue that plaintiffs' policies did not become effective, by their express terms, until they were received by plaintiffs, in San Antonio. Thus, the policies are said not to run afoul of the General Law's prohibition against contracting for insurance with foreign enterprises "when the insured is in the Republic at the execution of the contract." General Law, Art. 3, § II, ¶ 1.

Defendants acknowledge that the Turpins did communicate with plaintiffs while plaintiffs were in Mexico City in person, by telephone, and by facsimile. Defendants have not denied that such communications were in furtherance of offers to sell insurance. To justify these communications, defendants rely on the affidavit of David Lopez, a law professor at St. Mary's Law School in San Antonio, who specializes in the Mexican legal system in his teaching and research. In his opinion, an offering in Mexico, by a person not authorized to conduct insurance business in Mexico, to enter into an insurance contract, is not violative of General Law, Art. 3, § IV, as long as the offering is conditioned on the requirement that the prospective insured be outside of Mexico at the time of contracting. Defendants contend that plaintiffs both signed their applications for insurance in San Antonio and received their policies in San Antonio, establishing that they were outside of Mexico at the time of contracting. It follows, defendants argue, that any "offerings" made to plaintiffs while plaintiffs were in Mexico did not violate General Law, Art. 3, § IV and do not undermine the validity of the policies.

The Court need not resolve this conflict of interpretation of Mexican law at this time. It suffices to recognize that the unrefuted record suggests the Turpins may have acted, in their own right and as agents of Jackson National, in violation of Mexican law in such a way as to call into question the validity of the subject policies. Their conduct thus triggers comity concerns that weigh in favor of applying Mexican law to count I. These concerns cannot be said to weigh heavily in favor of applying Mexican law, however, because even if the Turpins are shown to have violated Mexican law by offering to sell insurance in Mexico, such conduct appears to have been incidental to negotiations lawfully commenced and consummated by plaintiffs in Texas.

2. *Relevant Policies of Forum.* The interests of the forum state, Texas, in regulating the conduct of an insurance company and independent insurance brokers licensed to conduct business within its borders are also substantial—as are its interests in enforcing contracts entered into in Texas, and in applying Texas law to litigation occurring there. After all, plaintiffs chose to do business with a United States company in Texas through independent agents whose office is in Texas, and chose to seek relief in the courts of Texas.[4]

4. Transfer of the case to this Court does not affect the Court's obligation to apply the sub-

3. *Relevant Policies of Other Interested States (Mexico).* Mexico's interest in regulating insurance operations within its territory is discussed above. The substantiality of this interest is demonstrated by a letter, dated October 23, 1996, from the President of Mexico's National Commission of Insurance and Bonds to the Michigan Commissioner of Insurance, raising concerns about the propriety of Jackson National's activities in Mexico, with reference specifically to the provisions of Article 3 of the General Law.

Mexico also has interests, of course, in protecting the rights of its citizens and residents, but these interests necessarily diminish when a citizen or resident leaves Mexico to transact business with a foreign company in foreign territory, which is not unlawful under Mexican law.

If Mexican law is applied to count I, and the insurance policies are found to be the product of unlawful activities in Mexico, rescission is plaintiffs' exclusive remedy, plus recovery of "moral damages." *See* Velasco Decl. p. 5.

■ 4. *Protection of Justified Expectations.* There is no serious dispute that defendants, licensed to do business in Texas, with offices in Texas, expected plaintiffs' policies to be governed by Texas law. Further, though plaintiffs argue for application of Mexican law, they have acknowledged, through counsel during the hearing on this motion, that they expected, and expect, that these policies are enforceable under Texas law. Hrg. Tr., Dec. 18, 2000, pp. 64–65. In fact, they had been expressly assured by Fernando Turpin, in writing, that the policies were valid and effective to cover Mexican citizens residing in Mexico.

There is, thus, no doubt that application of Texas law, offering several potential remedies relating to enforcement of the policies, better protects the justified expectations of all the parties. Even if plaintiffs justifiably expected that the policies would also be governed by Mexican law, where voiding and rescinding the policies is the only recourse under Mexican law, Mexican law can hardly be said to protect the plaintiffs' expectations, for they clearly did not intend to enter into invalid contracts. Indeed, plaintiffs admit that Texas law "better fulfills the intent of the parties." *Id.*

Hence, this policy consideration seriously calls into question the legitimacy of the Restatement § 192 presumption that the state of the insured's domicile has the greatest interest in the life insurance policy and that the policy should therefore be governed by the law of the insured's domicile. In fact, Comment d to § 192 expressly acknowledges that the law of the insured's domicile will *not* be applied if the life insurance contract "would be invalid under the local law of the state where the insured was domiciled at the time the policy was issued but valid under the local law of another state with a close relation to the transaction and the parties." "In such a situation," the Comment continues, "the local law of the other state should be applied unless the value of protecting the expectations of the parties by upholding the contract is outweighed in the particular case by the interest of the state where the insured was domiciled at the time the policy was issued in having its invalidating rule applied."

Thus, pursuant to Comment d, applied to the instant facts, the § 192 presumption is *reversed.* Because the policies are not valid and enforceable under Mexican law,

stantive law that would have applied had the case not been transferred. In re TMJ Im-

*plants,* 97 F.3d at 1055.

the law of Texas, having a close relation to the transaction and the parties, presumptively applies. And this presumption can only be overcome by showing that the value of protecting the parties' expectations by upholding the policies under Texas law is outweighed by Mexico's interest in invalidating the policies. Such a showing has not been made.

First, the value of protecting the parties' expectations is substantial, considering (a) that all parties intended to form valid contracts under Texas law, and (b) that any misunderstanding plaintiffs may have had about the enforceability of the contracts in Mexico does not go to the essence of the contracts. After all, the policies are still in force and are enforceable under the law of Texas, where plaintiffs have sought enforcement. Second, as observed above, Mexico's interests in protecting the rights of its citizens and prohibiting unauthorized insurance activities are not compelling where (a) plaintiffs initiated negotiations and received the policies in Texas, and (b) where violations of Mexican law leading to the formation of the contracts, if any, appear not to have been flagrant and deliberate, but technical and incidental to lawful conduct. The Court thus finds that the goal of protecting the parties' justified expectations is a critical policy consideration that weighs heavily in favor of applying Texas law.

5. *Policies Underlying Field of Law.* Plaintiffs have failed to identify any additional policies of insurance law or contract law generally that weigh in favor of applying Mexican law. On the other hand, the general rule that contracts are to be construed and enforced so as to give all provisions meaning and effectuate the parties' intentions certainly favors application of Texas law. *See Cross Timbers Oil Co. v. Exxon Corp.,* 22 S.W.3d 24, 26 (Tex.App.— Amarillo 2000); *Epps v. NCNB Texas Na-tional Bank,* 838 F.Supp. 296, 301 (N.D.Tex.1993).

6. *Certainty, Predictability and Uniformity of Result.* As this opinion demonstrates, the choice of law determination is a complex function of numerous considerations, whose relative significance varies depending on the facts and circumstances. Straightforward faithfulness to and application of the choice of law standards of the forum state is the best means of ensuring certainty, predictability and uniformity. Here, application of the most significant relationship test and the provisions of the Restatement—particularly those that apply most specifically to life insurance contracts—militate clearly and strongly under the circumstances of this case in favor of applying Texas law, which will enforce the obligations assumed by the parties in their contracts and fulfill the parties' expectations.

7. *Ease in Determination and Application of Law.* Comment j to Restatement § 6(2) observes that the policy favoring ease in determination and application of the law to be applied "should not be overemphasized." Accordingly, this consideration is not entitled to great weight. Moreover, whether Mexican law or Texas law is applied to plaintiffs' count I claim for rescission, neither poses significant difficulties.

## V. CONCLUSION

Having carefully evaluated all the factors and policy considerations made relevant by the Texas "most significant relationship test," the Court has reached the settled conclusion that Texas has the most significant relationship to the parties and subject matter of this litigation. This conclusion is driven ultimately by the guidelines prescribed in the Restatement (Second) of Conflict of Laws adopted by the Texas courts, particularly those applicable

specifically to life insurance contracts. Although several factors nominally favor application of Mexican law, the Court's duty to protect the justified expectations of the parties is critically important under the facts of this case. Mexican law, which will not enforce the policies, but may invalidate them, offers no prospect of protecting the parties' expectations. In comparison, all other considerations pale in significance. Accordingly, plaintiffs' motion for application of Mexican law to their count I claim is hereby **DENIED.** Texas law shall be applied in the adjudication of all of plaintiffs' claims.[5]

Clarification of the record as to where plaintiffs actually signed their applications and received their medical examinations would not affect this assessment. For this reason, plaintiffs' motion to conduct an evidentiary hearing on the choice of law issue is also **DENIED.**

**IT IS SO ORDERED.**

---

**5.** Plaintiffs have also argued that, even if Texas law is applied, it should operate, out of comity, to deny enforcement of the policies if they are found to have been entered into "with a view" of violating Mexican law. *See Access Telecom v. MCI Telecommunications Corp.,* 197 F.3d 694, 707 (5th Cir.1999). This "well-settled" rule of Texas contract law applies only if (1) Mexican law is relevant to the contracts in question, and (2) at least one of the parties intended to violate Mexican law. *Id.* at 707–08. Mexican law will be deemed relevant only if defendants are shown to have engaged in activities in Mexico that are prohibited under the General Law, Art. 3. As seen above, this is an open question on the present record. Yet, even if defendants were shown to have violated Article 3 because the policies were in some respect executed in Mexico or because defendants improperly offered to sell insurance in Mexico, such violation could not reasonably be deemed so grave as -to "demand comity" where plaintiffs undisputedly both initiated negotiations and received the policies in Texas. Moreover, the present record is bereft of evidence that any party intended to violate Mexican law in the activities leading to the formation of these contracts. Thus, under Texas law as applied to count I, *Access Telecom* does not represent strong authority for denial of enforcement of the policies.