**In re JACKSON NATIONAL LIFE INSURANCE COMPANY PREMIUM LITIGATION.**

No. MDL 1122.
No. 5:96–MD–1122.

United States District Court,
W.D. Michigan,
Southern Division.

June 6, 2002.

Joel Feldman, Sachnoff & Weaver, Ltd., Chicago, IL, Mary Kator, Jackson National Life, Lansing, MI, David A. Jones, Akin, Gump, Straus, Hauer & Feld, San Antonio, TX, for Jackson National Life Ins. Co.

Edwin DeYoung, Liddell, Sapp, Zivley, Hill & LaBoon, Dallas, TX, for Cora Turpin and Fernando Turpin.

G. Wade Caldwell, Martin, Drought & Torres, Antonio, TX, for Plaintiff.

## OPINION OF THE COURT ON THE CARFAGNO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

MCKEAGUE, District Judge.

Plaintiffs Francesco A. Carfagno and Laura Lujan de Carfagno, husband and wife, are residents of the Republic of Mexico. In 1991 and 1995, respectively, they purchased life insurance policies issued by defendant Jackson National Life Insurance Company ("Jackson National"), a Michigan corporation. On April 7, 1999, they commenced this putative class action in the District Court for Bexar County, Texas, asserting claims in contract and tort growing out of dissatisfaction with their insurance policies. Defendant Jackson National removed the action to the United States District Court for the Western District of Texas, with consent of defendants Cora Turpin and Fernando Turpin, the independent insurance agents in San Antonio, Texas, who negotiated the sales of plaintiffs' policies. Subsequently, the action was consolidated with other related cases in this multidistrict litigation and transferred to this Court. On July 18, 2001, the Court issued a choice of law ruling concluding that Texas, not Mexico, has the most significant relationship to the parties and subject matter of this litigation. *In re Jackson National Life Ins. Co. Premium Litigation,* 156 F.Supp.2d 846 (W.D.Mich.2001). Accordingly, all of plaintiffs' claims are governed by Texas law. Now before the Court is plaintiffs' motion for class certification.

## I. PLAINTIFFS' CLAIMS

At all times pertinent to this matter, both plaintiffs were and have been domiciled in Mexico. It is undisputed, however, that their initial contact with defendants Fernando and Cora Turpin, the independent insurance agents, occurred in San Antonio, Texas, while

plaintiffs were visiting at their aunt's home. There they first discussed the possibility of purchasing a Jackson National life insurance policy. There were subsequent meetings and negotiations, in person, by telephone and by facsimile communication, both in Mexico and San Antonio. According to the applications for insurance, each plaintiff's application was signed in San Antonio. Yet, while the Turpins' deposition testimony is consistent with the applications in this regard, plaintiffs recall having signed their applications in Mexico. There are also disputes of fact as to whether plaintiff Francesco Carfagno underwent a medical examination in conjunction with his application, and whether plaintiff Laura Lujan de Carfagno's medical examination was conducted in Mexico or Florida. Still, it is undisputed that the initial and subsequent premium payments, drawn either on a Texas bank or an Ohio bank, have been paid to the Turpins in San Antonio, and that both policies became effective upon delivery to plaintiffs in San Antonio. Both policies remain in force.

In their second amended complaint, plaintiffs assert eight claims against defendants. Count I is a claim for rescission of the insurance policies, contending plaintiffs purchased the policies as a result of actions by defendants that violated Mexican law.[1] The remaining seven claims allege defendants engaged in deceptive trade practices, committed fraud, made negligent misrepresentations, breached fiduciary duties, breached the insurance contracts, are civilly liable for criminal conduct, and violated duties of good faith and fair dealing. These claims are based (1) on allegations that defendants Jackson National and the Turpins misrepresented that they were authorized to conduct business in Mexico; and (2) in the case of plaintiff Francesco Carfagno, on allegations that defendants misrepresented that he was required to make premium payments only for a specified number of years to maintain his "vanishing premium" life insurance policy.

Plaintiffs ask the Court to certify two policyholder classes, defined as follows:

1. Mexican Resident Class—All purchasers, who were residents of Mexico at the time of the purchase, that purchased one or more whole or variable life insurance policies and/or annuity products from a Jackson National life insurance Texas agent from July 4, 1991 to April 7, 1999.

2. Texas Agent Vanishing Premium Class—All purchasers, who were residents of Mexico at the time of purchase, that purchased one or more whole or variable life insurance policies sold on the basis that the projected cash outlay would be for only a limited period of time from a Texas agent.

## II. RULE 23 STANDARDS

Plaintiffs seek class certification pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3). Rule 23(a) sets forth four threshold requirements that must all be met before a class can be certified:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

If each of these prerequisites (numerosity, commonality, typicality and adequacy of representation) is satisfied, plaintiffs must also show, pursuant to Rule 23(b)(3), "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

---

1. In holding that this claim, too, is governed by Texas law, the Court has recognized that Texas law could operate, out of comity, to deny enforcement of the policies if they are found to have been entered into "with a view" of violating Mexican law. *See Jackson National,* 156 F.Supp.2d at 855 n. 5, citing *Access Telecom v. MCI Telecommunications Corp.,* 197 F.3d 694, 707–08 (5th Cir.1999).

**138**

The Court has broad discretion in deciding whether to certify a class, but must conduct a "rigorous analysis" to ensure the prerequisites of Rule 23 are met. *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000); *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1078–79 (6th Cir.1996). "Maintainability may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide." *American Medical Systems*, 75 F.3d at 1079, quoting *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974). *See also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 168 (3rd Cir.2001) ("[A] preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action."); *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996) (going beyond pleadings is necessary to enable understanding of the precise nature of the claims in the context of certification issues). The party seeking class certification bears the burden of proof. *American Medical Systems*, 75 F.3d at 1079.

### III. TEXAS AGENT VANISHING PREMIUM CLASS

Plaintiffs acknowledge that the second class they seek to have certified, the "Texas Agent Vanishing Premium Class," is similar to vanishing premium classes which the Court has twice previously refused to certify in this multidistrict case. *See In re Jackson. National Life Ins. Co. Premium Litigation*, 193 F.R.D. 505 (W.D.Mich.2000); and *In re Jackson National Life Ins. Co. Premium Litigation*, 183 F.R.D. 217 (W.D.Mich.1998). In fact, plaintiffs make no response to defendants' contention that the law of the case doctrine operates to preclude relitigation of the issue.

"Under the doctrine of the law of the case, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *United States v. Todd*, 920 F.2d 399, 403 (6th Cir.1990); *see also United States v.*

*Moored*, 38 F.3d 1419, 1421 (6th Cir.1994). The purpose of the doctrine is to prevent continued litigation of settled issues. *Todd*, 920 F.2d at 403. The doctrine does not absolutely foreclose reconsideration of issues already decided; it is a discretionary tool designed to promote judicial efficiency. *Id.; see also Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991). As a rule, however, courts should be loathe to revisit prior decisions absent extraordinary circumstances, such as where substantially different evidence is presented, or where controlling legal authority has changed, or where the initial decision was clearly erroneous and would work a manifest injustice. *Moored*, 38 F.3d at 1421; *Moses*, 929 F.2d at 1137, citing *Arizona v. California*, 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The doctrine is particularly applicable in multidistrict litigation where the claims of numerous diverse parties might otherwise result in continuous relitigation of the same issues.

Plaintiffs have made no showing, nor even argued, that there are extraordinary circumstances warranting reconsideration of the Court's prior rulings on vanishing premium classes. It follows that these prior rulings are and remain the "law of the case." Accordingly, consistent with these rulings, the Court will deny plaintiffs' motion to certify the Texas Agent Vanishing Premium Class for the reasons that plaintiffs have failed to carry their Rule 23(b)(3) burden of showing (1) that common questions of law and fact predominate over the individual issues implicated by their count II through VIII claims; and (2) that class action treatment is superior to other available methods of fairly and efficiently adjudicating such claims.

### IV. MEXICAN RESIDENT CLASS

#### A. Numerosity

Plaintiffs also move the Court to certify a class premised essentially on their count I claim for rescission, consisting of all Mexican residents who purchased Jackson National policies or annuity products from a Texas agent during the period July 4, 1991 to April 7, 1999, the "Mexican Resident Class." Plaintiffs contend this class includes at least

122 members, is likely to include more than 500 members, and is sufficiently numerous to render joinder of all members impracticable.

 There is no strict numerical test for determining impracticability of joinder. *American Medical Systems,* 75 F.3d at 1079. The numerosity requirement requires examination of the specific facts of each case. *Id.* Jackson National does not contest plaintiffs' showing that the Rule 23(a)(1) numerosity requirement is satisfied. The Court is therefore satisfied that joinder of at least 120 other plaintiffs, whose claims will necessarily depend in some measure on individualized fact patterns, is impracticable.

## B. Commonality

 Plaintiffs contend there are questions of law and fact common to the Mexican Resident Class. Citing *Bittinger v. Tecumseh Products Co.,* 123 F.3d 877, 884 (6th Cir.1997), plaintiffs argue that a single common question of law or fact is sufficient. Yet, not any common question will suffice; what is needed is a common issue the resolution of which will advance the litigation. *Sprague,* 133 F.3d at 397. Class treatment is most appropriate where there are issues common to the class as a whole that turn on questions of law applicable in the same manner to each member of the class. *American Medical Systems,* 75 F.3d at 1080, citing *General Tel. Co. v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Plaintiffs identify five common questions:

1. Was Jackson National licensed and authorized to sell insurance, annuities and other products in the country of Mexico?

2. Was it legal for Jackson National to sell insurance, annuities and other products in the country of Mexico to residents of Mexico?

3. Was it legal for Jackson National to accept applications for insurance and other products prepared in Mexico?

4. Was it legal for Mexican residents to contract with Jackson National while in Mexico at the time of the effective contract?

5. Will Mexican resident purchasers be covered by U.S. State guarantee funds?

Defendants respond that these questions are either not in dispute or not relevant.

Plaintiffs' count I claim for rescission is based on the charge that defendants' actions that resulted in plaintiffs' purchases of insurance policies were violative of Mexican law. If the claims were ultimately proven, then, under Mexican law, the policies would be voidable and subject to rescission. The Carfagno plaintiffs' count I claims are not governed by Mexican law, however, but by Texas law. Still, rescission *may* be available under Texas law if plaintiffs are able to demonstrate (1) that defendants' conduct was violative of Mexican law; (2) that Mexican law is relevant; (3) that at least one of the parties to the illegal contract intended to violate Mexican law; and (4) that the illegality under Mexican law is such that principles of comity demand the resulting contract be voided, even at the expense of public policies of the forum state. *Jackson National,* 156 F.Supp.2d at 855 n. 5, citing *Access Telecom v. MCI Telecommunications Corp.,* 197 F.3d 694, 707–08 (5th Cir.1999).

The legal and factual arguments integral to plaintiffs' count I claims are summarized in the Court's earlier choice of ruling at 156 F.Supp.2d at 851–52, as follows:

Defendants' conduct is said to have been unlawful because Jackson National is undisputedly not authorized to conduct the business of insurance in Mexico. In support, plaintiffs cite the declaration of Javier L. Navarro Velasco, a lawyer who has practiced law in Mexico for over 20 years. With reference to Mexico's General Law of Mutual Insurance Companies and Corporations ("General Law"), Article 3, Mr. Velasco opines that it is unlawful for a person to practice active insurance operations and even to *offer,* by any means, public or private, within the national territory of Mexico, a policy of insurance issued by an insurance company not authorized to conduct business in Mexico. *See* Art. 3, §§ I and IV. He further opines that a contract that is the product of such activities is voidable and subject to rescission. *See id.,* Art. 3, § IV.

Defendants contend that the Turpins' communications with plaintiffs in Mexico were not a function of active insurance operations in Mexico, but were responsive to plaintiffs' inquiries, initiated in San Antonio. They also argue that plaintiffs' policies did not become effective, by their express terms, until they were received by plaintiffs, in San Antonio. Thus, the policies are said not to run afoul of the General Law's prohibition against contracting for insurance with foreign enterprises "when the insured is in the Republic at the execution of the contract." General Law, Art. 3, § II, ¶ 1.

Defendants acknowledge that the Turpins did communicate with plaintiffs while plaintiffs were in Mexico City in person, by telephone, and by facsimile. Defendants have not denied that such communications were in furtherance of offers to sell insurance. To justify these communications, defendants rely on the affidavit of David Lopez, a law professor at St. Mary's Law School in San Antonio, who specializes in the Mexican legal system in his teaching and research. In his opinion, an offering in Mexico, by a person not authorized to conduct insurance business in Mexico, to enter into an insurance contract, is not violative of General Law, Art. 3, § IV, as long as the offering is conditioned on the requirement that the prospective insured be outside of Mexico at the time of contracting. Defendants contend that plaintiffs both signed their applications for insurance in San Antonio and received their policies in San Antonio, establishing that they were outside of Mexico at the time of contracting. It follows, defendants argue, that any "offerings" made to plaintiffs while plaintiffs were in Mexico did not violate General Law, Art. 3, § IV and do not undermine the validity of the policies.

With this background in mind, the Court now considers plaintiffs' proposed five common questions under Rule 23(a)(2). As to the first, it is undisputed that Jackson National was not licensed and authorized to sell insurance products in Mexico. On this point there is thus no question the resolution of which will advance the litigation.

Proposed questions two through four all relate to the lawfulness, under Mexican law, of Jackson National's conduct acting through independent Texas agents, that resulted in Mexican residents' purchases of policies. As is evident from the differing expert opinions, summarized above, the proscriptive scope of Mexico's General Law of Mutual Insurance Companies and Corporations is a disputed legal question common to the count I claims of all class members. It is also clear, however, that irrespective of which construction of the General Law is adopted, the law will not be applicable to each class member in the same manner.

This is so because each class member's purchase of a Jackson National policy was the product of individualized dealings with independent insurance agents, implicating such variables as the nature and location of the policyholder's contacts with an agent, the location of any required medical exam, the location where the application for insurance was completed and signed, and the location of delivery of the policy to the policyholder. Plaintiffs maintain these activities were regularly conducted by Texas brokers in Mexico pursuant to a common or standardized course of conduct. Plaintiff's *evidence*, however, of such a common course of illegal conduct is not compelling.

Jackson National's official policy throughout the period in question was to require that medical examinations be conducted in the United States and that applications be completed and signed in the United States. This is undisputed. While there is evidence that individual Texas agents occasionally departed from this policy, the extent of these infractions is indeterminate and the evidence of record does not suggest widespread abuse or a designed course of conduct among Texas brokers.

Thus, while the lawfulness of Jackson National's conduct—assuming the actions of individual brokers may be attributed to Jackson National—may be a common question in the abstract, its resolution will depend on individualized and varied proofs pertaining to each class member's purchase. Plaintiffs have alleged, but have failed to carry their burden of adequately showing, that Jackson

National engaged in a common course of unlawful conduct with respect to each member of the class. Because each plaintiff's claim is dependant upon facts and circumstances peculiar to his or her purchase of a Jackson National policy, commonality is defeated. *Sprague,* 133 F.3d at 398. Questions two through four do not pass muster under the commonality test.

Question five relates not to the lawfulness of Jackson National's conduct under Mexican law, but to a requirement of Texas law. Yet the question whether Mexican resident purchasers will be covered by the Texas insurance guaranty fund is not at issue. It is undisputed that policyholders who are residents of Mexico at any time that Jackson National should become insolvent or otherwise unable to fulfill its contractual obligations are not protected by the Texas Life, Accident, Health and Hospital Service Insurance Guaranty Association. Because resolution of question five does nothing, therefore, to advance the litigation, it is not a common question of law or fact sufficient to satisfy the commonality requirement.

The related and more relevant question is whether Jackson National was required, and failed, to advise Mexican resident policyholders of this non-coverage at or before issuance of their policies. Such notice was arguably required to be affixed to the first page of each policy pursuant to Texas Insurance Code, Article 21–28E(a). This question is not integral to the count I claim for rescission, however, but appears to be related to plaintiffs' count II claim for violation of the Texas Trade Practices—Consumer Protection Act and violation of the Texas Insurance Code. It may be a question of law and fact common to the count II claims of all class members. Still, class treatment is nonetheless precluded by the law of the case. *See* part III above. The Court has already held that similar claims for violation of the Texas Insurance Code require individualized assessments of reliance or causation that predominate over the common questions. *Jackson National,* 193 F.R.D. at 512–13.

In sum, then, the Court finds that plaintiffs' five identified questions represent, at best, a weak and unpersuasive showing in support of the Rule 23(a)(2) commonality requirement.

**C. Typicality**

Rule 23(a)(3) requires that the Carfagnos' claims be "typical" of the claims of the class. The typicality requirement ensures that a sufficient relationship exists between the injury to the representative parties and the conduct affecting the class so that the Court may properly attribute a collective nature to the challenged conduct. *Stout,* 228 F.3d at 717; *Sprague,* 133 F.3d at 399. It ensures that the representative parties' interests are so aligned with those of the class members that they will, in pursuing their own claims, also advance the interests of the class members. *Sprague,* at 399. "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Id.*

The Carfagnos contend their claims are typical in that they, like all the class members, received policies from Jackson National that are not valid and enforceable under Mexican law. Illegality, they contend, is a common ground for rescission, independent of the factual variations that may attend class members' fraud claims.

Plaintiffs' argument ignores the fact that they have failed to demonstrate that defendants engaged in a common course of unlawful conduct in Mexico. Rather, as the Court observed above, the nature and extent of any unlawful conduct by Texas brokers can only be determined on a case-by-case basis by scrutinizing the communications between brokers and policyholders.

Moreover, rescission can be shown to be an appropriate remedy under count I only if any unlawful conduct was intentionally engaged in under circumstances which, in comity, demand that the resulting contracts be voided. These elements, too, require individualized inquiries. Thus, it is impossible to say that the Carfagnos' claims are typical of other class members' claims in material respects. The present record simply does not enable the Court to find that the Carfagnos' interests are so aligned with those of the class members that they will, in pursuing their own claims, also advance the interests

of the class members. *See Stout,* 228 F.3d at 717 (finding typicality not satisfied because of factual variations among class members' claims); *Sprague,* 133 F.3d at 399 (accord).

In fact, as observed by the Court in its choice of law ruling, the circumstances surrounding the Carfagnos' purchases represent a decidedly weak case for rescission pursuant to *Access Telecom,* 197 F.3d at 707–08:

> [E]ven if defendants were shown to have violated Article 3 because the policies were in some respect executed in Mexico or because defendants improperly offered to sell insurance in Mexico, such violation could not reasonably be deemed so grave as to "demand comity" where plaintiffs undisputedly both initiated negotiations and received the policies in Texas. Moreover, the present record is bereft of evidence that any party intended to violate Mexican law in the activities leading to the formation of these contracts. Thus, under Texas law as applied to count I, *Access Telecom* does not represent strong authority for denial of enforcement of the policies.

*Jackson National,* 156 F.Supp.2d at 855 n. 5.

It is for this reason, ostensibly, that plaintiffs' counsel, at the hearing on this motion, described the Carfagnos' count I claims as the "worst case scenario" among the class members. Indeed, it is conceivable that some Mexican Resident Class members could have potentially superior claims for rescission if, for instance, Texas brokers solicited them as prospective customers in Mexico and received their applications and/or premium payments in Mexico or if they received their policies in Mexico.

The Carfagnos have thus failed to show that their count I claims are "typical" and that they are well-suited to advance the interests of the class members.

### D. Adequacy of Representation

To satisfy Rule 23(a)(4), the Carfagnos must demonstrate that they will fairly and adequately represent and protect the interests of the class. *Stout,* 228 F.3d at 717. This "adequacy of representation" test entails two considerations: (1) whether class counsel are competent to conduct the litigation; and (2) whether there is any antagonism between the interests of the class representatives and other class members. *Id.; American Medical Systems,* 75 F.3d at 1083.

Here, no question is raised regarding plaintiffs' counsel's qualifications to represent the class. Defendants contend, however, that the Carfagnos' claims for rescission are antagonistic to the interests of other putative class members. Declaring that it has every intention of honoring the insurance contracts of Mexican policyholders, Jackson National submits the affidavits of several class members who want their policies enforced, not rescinded. Plaintiffs insist such an "antagonism" is easily remedied by allowing class members who wish to retain their policies to opt-out of the class.

If class certification were a realistic possibility here, Jackson National's concern would have merit. That is, if the Court were to allow the Carfagnos to represent the interests of all Mexican Resident Class members; and if the plaintiff class should ultimately obtain a judgment declaring class members' policies void pursuant to *Access Telecom;* then, notwithstanding Jackson National's present assurances that it will honor the policies, the legal enforceability of policies purchased by Mexican residents who opted out would nonetheless unavoidably be impugned. There would thus be a potential antagonism of interests.

Another adequacy of representation concern is posed by the issue raised above in connection with typicality. Considering plaintiffs' candid admission that their count I claims represent the worst case scenario among class members' claims, there is a real question about the Carfagnos' ability, through prosecuting their own claims, to fairly and adequately protect the potentially superior claims of other class members. *See American Medical Systems,* 75 F.3d at 1083 ("The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members."). If there is truth in the adage, "as goes the claims of the named plaintiff, so go the claims of the class," then there is good reason to doubt the ability of the Carfagnos, handicapped by their facts, to adequately represent the class. Plaintiffs have failed to persuade the Court that they can do so.

## V. CONCLUSION

The Court thus concludes that plaintiffs have failed to carry their burden of proof. They have failed to show that the commonality, typicality and adequacy of representation requirements of Rule 23(a) are satisfied by the first of their proposed classes, the Mexican Resident Class. It is therefore unnecessary to consider the requirements of Rule 23(b)(3), although the above analysis clearly indicates that common questions of law or fact do not predominate and that class treatment is not a superior method for fair and efficient adjudication of these claims.

Further, plaintiffs' motion to certify their second proposed class, the Texas Agent Vanishing Premium Class, must also be denied, by virtue of the law of the case doctrine. The Court has twice already denied motions to certify similar vanishing premium classes in this litigation, and plaintiffs have not even argued that their proposed class is materially distinguishable or that any extraordinary circumstances warrant reconsideration.

For all the foregoing reasons, plaintiffs' motion for class certification must be denied. An order consistent with this opinion shall issue forthwith.