Brenda J. **BRADBERRY** and Edwin C. Bradberry, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY,** Defendant.

No. 02–2729–D.

United States District Court, W.D. Tennessee, Western Division.

Aug. 13, 2004.

Alan G. Crone, Crone & Mason, PLC, James J. Webb, Jr., (argued) Memphis, TN, for Plaintiffs.

Shaunda Patterson–Strachan, Waldemar J. Pflepsen, Jr., (argued) Jorden Burt LLP, Washington, DC, Jeffrey Zager, Robert B. Littleton, Miller & Martin, LLP, Nashville, TN, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DECERTIFY THE CLASS

DONALD, District Judge.

Before the Court is the motion of John Hancock Life Insurance Company[1] ("Defendant" or "John Hancock") to decertify the class certified by this Court in its October 6, 2003, Order Granting Plaintiff's Rule 23 Motion to Certify Class. The certified class consists of:

> Any and all Tennessee residents who, during the four-year period preceding August 20, 2002, up to and including the date on which this class is certified, purchased from John Hancock Mutual Life Insurance Company a Long Term Care Insurance Policy and Enhanced Elimination Period Rider but did not file a claim thereunder.

Finding that the requirements of Rule 23 are no longer satisfied, the Court grants Defendant's motion to decertify the class.

---

1. Although the case is styled as "John Hancock Mutual Life Insurance Company," the correct name of the party is "John Hancock Life Insurance Company."

## I. Factual and Procedural Background

The relevant facts are set out in this Court's Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, entered February 23, 2004.

Brenda J. Bradberry and Edwin C. Bradberry ("Plaintiffs" or "the Bradberrys") filed their class action complaint in state court on August 20, 2002, alleging (1) violations of the Tennessee Consumer Protection Act ("TCPA"), Tenn.Code Ann. § 47–18–104(b)(5), (9), (19), & (27) (2004); (2) fraud; and (3) breach of contract. Defendant removed the action to this Court on September 19, 2002. Jurisdiction in federal court is based on diversity of citizenship. 28 U.S.C. § 1332 (2004).

On October 6, 2003, the Court certified the class as defined above, holding that the proposed class met all the prerequisites and requirements of Federal Rule of Civil Procedure 23.[2]

On February 23, 2004, the Court granted summary judgment to Defendant on Plaintiffs' TCPA claim, holding that it was barred by the statute of limitations. The Court further held that Plaintiffs could not maintain a claim for breach of contract based on Defendant's denial of Mrs. Bradberry's claim for benefits, because her claim was not within the scope of her long-term care ("LTC") insurance policy ("Policy"). The Court denied Defendant's motion for summary judgment on Plaintiffs' fraud claim, holding that a genuine issue of fact remained as to the reasonableness of Plaintiffs' reliance on promotional materials and statements made by Defendant's agent and as to whether Defendant adequately disclosed material facts through its agent and promotional materials. Finally, the Court denied Defendant's motion for summary judgment on Plaintiffs' claim that the Enhanced Elimination Period Rider ("EEP Rider") provided only illusory benefits. The Court denied Defendant's motion for reconsideration on May 26, 2004.

Defendant filed this motion to decertify the class on May 3, 2004. Defendant argues that (1) the remaining claims fail to meet Rule 23(a)'s commonality requirement and Rule 23(b)'s predominance requirement, (2) adjudication on a class basis is not superior to individual prosecution, and (3) Plaintiffs fail to meet Rule 23(a)'s typicality and adequacy of representation requirements. Defendant further argues that the illusory benefits claim cannot be a class claim because, as articulated by Plaintiffs, the claim belongs only to Mrs. Bradberry, who is not a member of the class, and not to Mr. Bradberry, who is the sole class representative. Plaintiffs responded on May 25, 2004, arguing that all requirements of Rule 23(a) and 23(b)(3) are satisfied. Defendant replied, with leave of Court, on June 14, 2004. The Court heard oral arguments on the motion in open court on July 23, 2004.

## II. Legal Standard for Class Certification

Rule 23(a) of the Federal Rules of Civil Procedure establishes the prerequisites for certification of a class and maintenance of a class action. These prerequisites are generally referred to as numerosity, commonality, typicality, and adequacy of representation. Fed.R.Civ.P. 23(a). Rule 23(b) further requires that the common questions of law or fact predominate over the questions affecting individual members. Fed.R.Civ.P. 23(b)(3).

The burden to establish each element is on the party seeking certification of the class. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 520 (6th Cir.1976). The party seeking certifi-

---

2. The relevant provisions of Rule 23 are,

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23.

cation must adequately state the facts that indicate each requirement of the rule is fulfilled. *Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir.1974). In assessing a plaintiff's petition, the court assumes the truth of the allegations in the complaint and does not examine the merits of the action. The court, however, does conduct a rigorous analysis of the petition to ensure that all of the prerequisites are fully met. *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996).

Once a class is certified, however, the district court's duty does not end. Rather, the court must continue to ensure that the requirements of class certification remain satisfied as the case progresses, and the court may alter or amend the certification if the requirements are no longer met. *See Barney v. Holzer Clinic, Ltd.,* 110 F.3d 1207, 1214 (6th Cir.1997) (as long as district court retains jurisdiction over case, it must continue carefully to scrutinize the adequacy of representation and must withdraw certification if such representation is not furnished); *Stastny v. S. Bell Tel. & Tel. Co.,* 628 F.2d 267, 276 (4th Cir.1980) (if course of trial on the merits indicates that class certification was improper, court must be prepared to alter or amend certification under Rule 23(c)(1)); Fed.R.Civ.P. (23)(c)(1)(C) ("An order under Rule 23(c)(1) may be altered or amended before final judgment.").

## III. Analysis

The Court finds that Plaintiffs may no longer maintain a class action in this case because neither the predominance and superiority requirements of Rule 23(b)(3) nor the typicality and adequacy of representation requirements of Rule 23(a) remain at this stage in the litigation.

Under Rule 23(b)(3), the court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action value-

less." *In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 297, 307 (E.D.Mich.2001); *see also In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 517 (S.D.N.Y. 1996) (same). Subdivision (b)(3) is similar to the commonality requirement of subdivision (a)(2) but is more stringent, in that it requires that common issues predominate, rather than simply being present. *See In re Am. Med. Sys.,* 75 F.3d at 1084.

■ After the summary judgment order, only two claims remain. As to the fraud claim, to succeed on a claim for fraud based on nondisclosure or concealment, a plaintiff must prove four elements: (1) that the defendant had a duty to disclose, (2) that the defendant failed to disclose, (3) that the plaintiff reasonably relied on the misrepresentation, and (4) that the plaintiff suffered injury as a result. *See Chrisman v. Hill Home Dev., Inc.,* 978 S.W.2d 535, 538–39 (Tenn.1998) ("The tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury."). In the summary judgment order, the Court held that Defendant had a duty to disclose and that Plaintiff suffered injury. The Court also held that a genuine issue of material fact remained as to whether Defendant—through its promotional materials *or the statements made by its agent*—failed to disclose material facts and as to whether Plaintiffs reasonably relied on Defendant's promotional materials *or the statements made by its agent.* (*See* Order Granting in Part & Den. in Part Def.'s Mot. for Summ. J. at 14–15.)

■ Defendant argues, and the overwhelming weight of authority shows, that cases involving sales through non-uniform oral presentations and issues of reliance are generally unsuited for class certification. Courts considering these issues usually hold that individualized issues predominate over common questions, where there is no evidence of a uniform course of conduct in sales presentations, and necessary factual determinations include what statements were made or not made to each class member, whether the class member relied on those representa-

tions, and whether that reliance was reasonable, given other factors including background knowledge, understanding of the transaction, and receipt of documents. This is true both for insurance sales cases and other cases involving common law fraud claims. *See, e.g., Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir.2002) (upholding district court's denial of class certification in RICO and fraud case alleging misrepresentations in sale of insurance policies because oral representations made to each class member must be assessed on an individualized basis, such that common questions did not predominate); *In re LifeUSA Holding, Inc.*, 242 F.3d 136, 144–47 (3d Cir.2001) (finding abuse of discretion in district court's certification of class when sales of deferred annuity contracts were neither uniform nor scripted, and marketing materials were neither uniform nor used by agents uniformly, and thus individualized issues defeated commonality and predominance requirements); *Stout v. Byrider*, 228 F.3d 709, 718 (6th Cir.2000) (neither typicality, adequacy of representation, nor predominance requirements met when factual core of case, including fraud claim, was what each putative class member's understanding of the differing transactions was, whether each person relied upon false representations or failures to disclose in those transactions and, if so, what damages were proximately caused by that reliance); *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 209 F.R.D. 134 (W.D.Mich. 2002) (when evidence did not show any common or standardized course of conduct in sale of insurance policies, resolution of lawfulness of defendant's conduct, including fraud claim, depended on individualized and varied proof peculiar to each class member's purchase, thus defeating commonality and typicality prongs); *Markarian v. Conn. Mut. Life Ins. Co.*, 202 F.R.D. 60 (D.Mass.2001); *Begley v. Acad. Life Ins. Co.*, 200 F.R.D. 489 (N.D.Ga.2001); *Keyes v. Guardian Life Ins. Co. of Am.*, 194 F.R.D. 253 (S.D.Miss.2000); *Cohn v. Mass. Mut. Life Ins. Co.*, 189 F.R.D. 209 (D.Conn.1999); *Rothwell v. Chubb Life Ins. Co. of Am.*, 191 F.R.D. 25 (D.N.H.1998). *Compare In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998) (where evidence showed uniform, scripted, and standardized sales presentations, district court found that oral component of presentations did not vary appreciably among class members, and agents worked exclusively for defendant, were uniformly trained, and were required to use uniform sales materials, class certification in settlement class action was appropriate).

Indeed, according to the Second Circuit,

Where there are material variations in the nature of the misrepresentations made to each member of the proposed class, however, class certification is improper because plaintiffs will need to submit proof of the statements made to each plaintiff, the nature of the varying material misrepresentations, and the reliance of each plaintiff upon those misrepresentations in order to sustain their claims. As these are questions that more than likely will be the central disputed issues in a fraud action, certification of the class will not negate the need for a series of mini-trials where there are material variations in the nature of the misrepresentations made.

*Moore*, 306 F.3d at 1253; *see also Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 341–42 (4th Cir.1998) (non-standard written and oral statements and reliance issues in fraud and negligent misrepresentation claims preclude class certification).

The allegations and evidence presented here so far show that individualized factual determinations clearly predominate over common questions because each class member's purchase of an insurance policy and EEP Rider was highly individualized. The individualized character of the transactions is shown in both the allegations as to Plaintiffs' own purchase, as well as in the declarations of Defendant's agents as to their sales practices. In Plaintiffs' case, their transaction began with an unsolicited telephone call from Ms. Hudson, then an agent for Defendant. At that time, Mrs. Bradberry already had an LTC insurance policy with another company, providing her with personal background information on such policies. In the eight months between that phone call and the Bradberrys' purchase of the Policy and EEP Rider, they spoke and met with Ms. Hudson several times. They heard oral statements

and representations from her, as well as receiving certain documents regarding the Policy, and finally, the Policy and EEP Rider themselves. Further, Mr. Bradberry consulted other sources for information on LTC insurance policies. Ms. Hudson recalls explaining to Mr. Bradberry anything he wanted or needed to know about the policies. These facts indicate a highly individualized transaction, including oral presentations, use of personal background information, and consultation with sources external to Defendant.

Furthermore, the declarations of Defendant's agents show that Defendant's sales of insurance policies use a non-uniform, non-standardized process. Defendant's agents were not limited to selling only Defendant's policies, although they did receive training from Defendant when assigned to sell John Hancock policies. Some clients resulted from "cold calls," while others came from referrals to agents. Sales were made primarily through oral, "kitchen table" presentations, which were not scripted. The agents attempted to determine particular facts about a potential client's personal situation, which certainly varies from person to person. Sales involved numerous discussions or meetings with the potential client. The marketing materials used by each agent varied, because, while Defendant did create and provide its own marketing materials, there was no requirement that all of those materials be provided to each customer. Also, individual agents could create and use their own marketing materials, if submitted to Defendant for approval. Finally, one can extrapolate from the Bradberrys' own use of background knowledge and external sources that other purchasers may also have consulted other sources.

Under these circumstances, it is impossible for the Court to consider issues of what representations were made or not made to each class member, whether the class member relied on those representations, and whether such reliance was reasonable without examining the individual circumstances of each person's transaction. As such, the individualized issues predominate over any common questions. Further, such a fact-intensive, individualized inquiry—commonly referred to as "mini-trials"—does not fulfill the efficiency goals of a class action, which should depend on uniform, standardized proof. A class action is thus not the superior method for adjudicating this controversy, as is required under Rule 23(b)(3).

Plaintiffs' arguments as to commonality and predominance focus solely on the advertising materials used by Defendant's agents, in an attempt to circumvent the necessarily individualized nature of the non-scripted, oral presentations. First, such a focus is contrary both to this Court's statements in the summary judgment order, as well as to Plaintiffs' own earlier descriptions of their claim. This shifting litigation strategy at various stages is not well-taken. Second, even if the Court were to find that common questions did exist between the class and Mr. Bradberry, the class representative, based on Defendant's written marketing materials, such a finding would not dictate a similar finding on predominance. As stated above, the predominance requirement is related to, although more stringent than, the commonality prerequisite; it is quite possible for Plaintiffs to meet one and not the other. Third, Plaintiffs' citations to certain district court cases allowing class certification even when reliance or fraud claims were involved simply does not overcome the weight of authority, particularly appellate court cases, holding otherwise, as cited above.

■ The Court, of course, must also consider the other remaining claim, that the EEP Rider provided only illusory benefits. As Plaintiffs have articulated this claim, it applies only to policyholders with elimination periods of less than 90 days, the length of the certification requirement.[3] Mr. Bradberry does not have such a claim, because his elimination period is 180 days. This claim belong only to Mrs. Bradberry of the named Plaintiffs, because she has an elimination period of 60 days. As the class is defined, however,

---

**3.** "Yet if an insured has an elimination period of less than ninety days, as does Mrs. Bradberry, whose elimination period is sixty days, and she cannot count any days towards her elimination period without a certification requirement that she will need assistance for ninety days, the rider is meaningless." (Mem. of Law in Resp. to Def.'s Mot. for Summ. J. at 6.)

574

Mrs. Bradberry is not a class member. The class includes only people who did not file a claim under their Policy, but Mrs. Bradberry did file a claim. Mrs. Bradberry may not be a representative of the class, because she is not a class member. *See East Tex. Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) ("As this Court has repeatedly held, a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."); *Garrett v. City of Hamtramck,* 503 F.2d 1236, 1245 (6th Cir.1974). As such, the sole representative of the class does not possess this claim, even though those class members with elimination periods of less than 90 days may themselves have such a claim.

The Court finds this situation inappropriate for class treatment on several grounds. First, it is not clear that Mr. Bradberry could prosecute this claim on behalf of the class without possessing it himself. Second, the situation indicates that typicality is lacking between the representative plaintiff and the class. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys. Inc.,* 75 F.3d at 1082. The claims could not be based on the same legal theory or arise from the same course of conduct if Mr. Bradberry does not even possess such a claim. Finally, adequacy of representation appears to be lacking because, if Mr. Bradberry does not have such a claim to bring, there is no incentive for him to prosecute this claim in any vigorous manner.

More common questions do exist as to this illusory benefits claim than with the fraud claim; it involves a more generalized inquiry into the nature of the EEP Rider and the ninety day certification requirement. However, even these common questions do not overcome the highly individualized inquiry necessitated by the fraud claim, as described above. Therefore, even if the illusory benefits claim were a class claim, and not simply one brought by Mrs. Bradberry, the Court would still find that the class as certified now fails the predominance requirement of Rule 23(b)(3).

## IV. Conclusion

The Court finds that the requirements for maintaining a class action no longer exist here, after the Court's order on summary judgment and the completed pre-certification discovery. Accordingly, in its discretion and continuing supervision of the case, the Court **GRANTS** Defendant's motion to decertify the class. The Plaintiffs' claim must be prosecuted individually.